**Dale MEYER d/b/a Wagner Livestock Sales Company, Plaintiff,**

v.

**NORWEST BANK IOWA, NATIONAL ASSOCIATION, Defendant.**

No. CV 94–4079.

United States District Court,
D. South Dakota,
Southern Division.

April 12, 1996.

David L. Reinschmidt, Munger & Reinschmidt, Sioux City, IA, Paul M. Bengford, Martin, SD, for Plaintiff.

Vance R.C. Goldammer, Gary J. Pashby, Boyce, Murphy Law Firm, Sioux Falls, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

This suit involved two checks written by cattle buyer Don Foreman to a sale barn, Wagner Livestock Market. The checks were dishonored by Foreman's bank, Norwest Bank Iowa. Wagner Livestock brought suit against Norwest alleging conversion due to the setoff of the funds in Foreman's account against the debt owed Norwest. A jury found for Wagner Livestock and awarded damages in the amount of $216,518.30. Defendant Norwest Bank now moves for Judgment as a Matter of Law pursuant to Fed. R.Civ.P. 50(b). Doc. 52. Plaintiff resists the motion.[1] Doc. 56 & 57.

---

1. Plaintiff moves to strike Defendant's reply brief on the grounds that it was not filed within ten (10) days as required by Local Rule 7.2. Doc. 61. Defendant responds that the reply was time-

A motion for judgment as a matter of law may be made at any time prior to submission of the case to the jury. Fed.R.Civ.P. 50(a)(1). The same motion may be renewed within ten days after entry of judgment. Rule 50(b). The Court denied Norwest's motion for judgment as a matter of law made at the close of presentation of evidence. Judgment in this case was entered August 10, 1995. Norwest's renewed motion was timely filed August 18, 1995.

■■■■ The Eighth Circuit recently commented, "There is some uncertainty whether federal courts should apply state law standards or federal law standards to motions for a judgment notwithstanding the verdict in diversity cases." *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 n. 2 (8th Cir. 1994). The federal law standard is that a motion for judgment as a matter of law presents a legal question to the district court, which is "whether there is sufficient evidence to support a jury verdict." *McKnight,* 36 F.3d at 1400. A more complete description of the analysis is found in *Chicago Title Ins. Co. v. Resolution Trust Corp.:*

> The motion can be granted "if, under the governing law, there can be but one reasonable conclusion as to the verdict." If reasonable minds could differ about the import of the evidence, the motion should be denied. We affirm a jury verdict unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could have not found for that party.

53 F.3d 899, 904 (8th Cir.1995). The standard in South Dakota is somewhat different. A motion for judgment as a matter of law relates back to a motion for a directed verdict, and is reviewed against the "same standard." *Olson v. Judd,* 534 N.W.2d 850, 852 (S.D.1995). When deciding either a motion for judgment as a matter of law or for a directed verdict in South Dakota,

> we view the evidence in a light that is most favorable to the non-moving party and give that party the benefit of all reasonable

inferences that fairly can be drawn from the evidence. When viewed in this light, if there is any substantial evidence to sustain the cause of action or defense, it must be submitted to the finder of fact.

*Id.* Furthermore, a jury verdict "will not be set aside except in extreme cases...." *Treib v. Kern,* 513 N.W.2d 908, 911 (S.D. 1994) (citations omitted). Although the standards are similar, and although both parties cite the Court to the federal standard rather than to South Dakota's law, the Court believes it is the better practice to apply the South Dakota standard in a diversity case to which the Court has applied South Dakota law. *See, i.e., Burk v. Emmick,* 637 F.2d 1172, 1177 (8th Cir.1980) (citing Iowa law as the standard when affirming jury verdict). In the present case, the result would be the same under either the federal or the state standard.

■■■■ The jury returned a verdict in favor of Plaintiff on the issue of conversion. In order to recover under a theory of conversion, Plaintiff was required to prove the following elements:

(1) That Wagner Livestock had an ownership interest or possessory right in Foreman's deposits;

(2) That Wagner Livestock's ownership or possessory right in Foreman's deposits was greater than that of Norwest;

(3) That Norwest's exercise of dominion or control over the deposits was inconsistent with, and in derogation of, Wagner Livestock's possessory rights in the deposits; and

(4) That Wagner Livestock was damaged.

Doc. 45 & 46 at Jury Instruction # 11 (citing *In re Estate of Bearbower,* 426 N.W.2d 392, 394 (Iowa 1988); *Rensch v. Riddle's Diamonds of Rapid City,* 393 N.W.2d 269, 271 (S.D.1986); *Rapid Sewing Center, Inc. v. Sanders,* 79 S.D. 373, 112 N.W.2d 233, 236 (1961)).

■■■■ Considering elements 1 through 3 for conversion in reverse order, in this in-

---

ly and cites the Court to Fed.R.Civ.P. 6(a) & (3). Doc. 62. Because the reply brief was due within ten (10) days, Rule 6(a) applies and intermediate Saturdays, Sundays and holidays are excluded.

Three (3) extra days are allowed for service by mail. Rule 6(e). Defendant's reply brief was timely filed and Plaintiff's motion to strike is denied.

stance, the act of setting off the funds in Foreman's account was the act by which the bank exercised control over the deposits, allegedly in derogation of Wagner Livestock's possessory rights in those deposits. The jury was instructed that the right to setoff is generally permitted by statute and specifically permitted by the terms applicable to the business deposit account Don Foreman established at Norwest Bank in 1987.[2] Doc. 45, Jury Instruction # 16. The jury was further instructed that a bank loses the ability to setoff funds in a customer's account when the bank fails to act in good faith in setting off the account.[3] *Id.* The evidence regarding

2. The Court notes that South Dakota has been characterized as following an "equitable" rule with regard to setoff, in that it permits setoff only when "a bank lacks knowledge that the deposited sums belongs to a third person and lacks knowledge of facts necessitating further inquiry" and it has changed its position or has superior equities. Annotation, *Bank's Right to Apply Third Person's Funds, Deposited in Debtor's Name, on Debtor's Obligation,* 8 A.L.R.3d 235 (1966). *Shotwell v. Sioux Falls Savings Bank,* 34 S.D. 109, 147 N.W. 288 (1914), involved the defendant bank set off funds held by the plaintiff, a grain elevator operator, and received from the sale of a third party's grain. In *Shotwell,* the South Dakota Supreme Court affirmed a bank's right to offset funds "to secure overdrafts and debts owing" but held that anyone depositing funds belonging to a third person in his or her own name, holds those funds in trust. *Id.* at 290–91. Accordingly, the court held that a "bank had no right, legally or equitably, to be paid out of this or any other fund not belonging to [the owner of the account.]" *Id.* at 291. *Shotwell* further held that a bank is not "put upon inquiry to ascertain the true ownership of a fund of such character, where there is nothing to fairly give notice of the source from which the fund was received, or that the fund does not belong to the depositor or payer[.]" *Id.* at 290. In this case, the Court instructed the jury:

> A bank loses the ability to setoff funds in a customer's account when the bank fails to act in good faith in setting off the account....' Good faith is a subjective standard which depends upon what Norwest actually knew....

Doc. 45, Jury Instruction # 16. Norwest's knowledge that the funds in Foreman's account belonged to various sale barns as the proceeds from Foreman's resale of cattle purchased with funds from the same account, was demonstrated by testimony that Norwest had full knowledge that Don Foreman was a order buyer, that Foreman used a single account for his banking transactions, and that Norwest permitted Foreman to float checks so long as there were sufficient numbers of cattle in Foreman's feedlot to secure his substantial debt to the bank. Other courts have held that the same type of information about a customer puts the bank on notice "of its duty to inquire into the possible trust nature of the deposit and the deposit's true ownership before it could apply such deposit to an overdraft or debt of the account holder." *Blackwell Livestock Auction, Inc. v. Community Bank of Shidler, Okla.,* 864 P.2d 1297, 1299 (Okla.App.1993). *See also South Central Livestock Dealers, Inc. v. Security*

*State Bank of Hedley, Texas,* 614 F.2d 1056, 1059 (5th Cir.1980) (applying Texas' codification of principle); *Iola State Bank v. Bolan,* 235 Kan. 175, 679 P.2d 720, 732 (1984) (finding bank had actual knowledge of purchaser's methods and could not setoff his funds as they belonged to third parties).

As a final comment, the Court notes that the recent cases holding that a bank cannot off set funds in an account which it knows or should know belong to a third party, were decided well after the jurisdictions adopted the Uniform Commercial Code. Similarly, *Shotwell* was decided in 1914 and South Dakota adopted the U.C.C. in 1966. There is no indication from the case law that the rule of *Shotwell* has been superseded by the adoption of the U.C.C. *See South Central Livestock Dealers, Inc. v. Security State Bank of Hedley, Texas,* 551 F.2d 1346, 1349–50 (5th Cir. 1977) (holding that the rule of law in a case similar to *Shotwell* and decided in 1923 was not overruled by subsequent adoption of the U.C.C. in Texas). *See also Blackwell Livestock Auction,* 864 P.2d at 1299 (citing 1927 case law).

3. The jury was instructed that good faith is "honesty in fact." Doc. 45 at Jury Instruction # 14. Plaintiff baldly states, "We know that the jury determined that Norwest lacked good faith," Doc. 57 at 8, while Defendant argues that the testimony merely established negligent conduct and that negligence is not bad faith, Doc. 58 at 10. The jury answered "yes" to a general verdict form asking "Has it been proved by a preponderance of the evidence that Defendant, Norwest Bank of Sioux City, has committed unlawful conversion as claimed by Wagner Livestock. Sales Company?" Doc. 47. Although there was no special verdict form, the jury was required to find that the Bank did not act in good faith in order to find that Norwest did not have superior rights in the cattle or proceeds subject to Norwest's security agreement with Foreman. Doc. 45, Jury Instructions # 12, 13. Given the conflicting testimony from Mike Rickert, the loan officer in charge of Don Foreman's account; Don Vaudt, Rickert's supervisor; and Don Foreman regarding what the bank knew about Foreman's operation, either parties' interpretation of the evidence and verdict is supported. The testimony and documentation presented by both parties was such that "reasonable minds could differ about the import of the evidence." The issue of good faith was properly submitted to the jury. The jury's finding that Wagner Livestock's rights in the cattle or proceeds is superior to Norwest's

what Norwest actually knew about Foreman's cattle buying operation operation was such that reasonable minds could differ. The weight of the evidence was that, with the exception of the disappearance of the cattle in Foreman's feedlot that were the Bank's security, the Bank was well appraised of Foreman's operation and how he was operating on a float and with advances on payments by IBP. The issue was, therefore, properly submitted to the jury. However, looking at the testimony in the light most favorable to Wagner Livestock, the non-moving party, there was sufficient evidence to support the jury's verdict that the funds in Foreman's account had been converted through an improper setoff.

■ The second element of conversion, as defined by the Court, is the need to demonstrate that the plaintiff's ownership or possessory rights in the deposits was greater than that of the defendant. This element is analyzed by reference to the Uniform Commercial Code, as adopted in South Dakota. *See* S.D.C.L. chapter 57A. Norwest argues that Plaintiff failed to prove an ownership interest or possessory right in the deposit account, or that Defendant's interest in the deposit account is superior to Plaintiff's interest in that account. However, it is well-settled that the rights of an unsecured cash seller of goods already delivered to a buyer are subordinate to those of a holder of a secured interest in the same goods if the holder of the secured interest acts in good faith. S.D.C.L. § 57A–2–403; *Burk,* 637 F.2d at 1174 (stating rule in case involving cash sale of cattle and dishonor of buyer's check by secured Bank); *Matter of Samuels & Co.,* 526 F.2d 1238, 1243 (5th Cir.) (stating rule in case involving cash sale of cattle to packing house (buyer) and claim of secured creditor and sellers to packaged meat), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *Iola State Bank v. Bolan,* 235 Kan. 175, 679 P.2d 720, 729 (1984) (stating

rule in case involving cash sale of grain and dishonor of buyer's check by secured Bank). Norwest, as a secured creditor, has rights in the cattle and their proceeds superior to those of Wagner Livestock unless Wagner Livestock can prove that Norwest did not act in good faith.

■ To satisfy the first element of conversion, as defined by the Court, Wagner Livestock must prove that it had an ownership interest or possessory right in Foreman's deposits. Rights in the deposit is proved by demonstrating a relationship between the proceeds from the cattle sold to Don Foreman on February 1 and 8, 1994, and the funds in Foreman's account at Norwest. The evidence showed that Foreman wrote two checks to Wagner Livestock which were dishonored: a check for $246,048.13 on February 1, 1994, and one for $73,777.57 on February 8, 1994. At the close of evidence in this case, the Court determined that the evidence traced only $216,518.30 in proceeds from Wagner Livestock to Don Foreman to IBP to Norwest Bank. Trial Ex. 150 & 151. The damage figures submitted to the jury were, therefore, limited to that amount. Doc. 45, Jury Instruction #18. Whether Wagner Livestock must also trace those proceeds out of Foreman's account to prove which funds were actually used in the setoff is the issue for this motion for judgment as a matter of law.

■ Norwest argues that Wagner Livestock must prove that the funds traced to Norwest remained in the Foreman account and were available for setoff on February 11, 1994, the date of the alleged conversion.[4] Norwest urges this Court to find that South Dakota would apply the "lowest intermediate balance" rule to trace the proceeds in this case. In order to trace identifiable proceeds through a commingled bank account, some courts have used common law tracing rules such as the "lowest intermedi-

---

rights is supported by substantial evidence from the conflicting evidence that was presented.

4. The Court has reviewed portions of the reporter's notes of the closing arguments. Norwest

argued the facts which would result from the application of the lowest intermediate balance rule to the jury during closing. It is apparent from the verdict that the jury did not apply the rule. Doc. 47.

ate balance" rule.[5] The lowest intermediate balance rule is a legal construct used to recover commingled funds in bankruptcies, trusts, forfeitures and secured transactions. 4 L. King, *Collier on Bankruptcy* ¶ 541.13 (1993); *Restatement (Second) of Trusts* § 202, Comment J (1959); *In re Columbia Gas Systems, Inc.,* 997 F.2d 1039 (3d Cir. 1993) (using lowest intermediate balance rule to trace funds held by owner of natural gas pipeline and determined to be held in trust rather than property of bankruptcy estate); *Harley–Davidson Motor Co. v. Bank of New England,* 897 F.2d 611 (1st Cir.1990) (discussing use of lowest intermediate balance rule to trace proceeds from sale of secured collateral); *First Wisc. Financial Corp. v. Yamaguchi,* 812 F.2d 370 (7th Cir.1987) (discussing lowest intermediate balance rule as one method of tracing funds to establish liability of guarantor); *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1159 (2d Cir.1986) (discussing use of lowest intermediate balance rule and burden of proof in drug proceeds forfeiture cases). The rule presumes that "any payments made [from the commingled account] were from other than the funds in which another had a legally recognized interest." *Universal C.I.T. Credit Corp. v. Farmers Bank of Portageville,* 358 F.Supp. 317, 325 (E.D.Mo.1973). In addition, the rule presumes:

> Where, however, after the commingling, all the money is withdrawn, the trust fund is treated as lost, even though later deposits are made into the account. Should the amount on deposit be reduced below the amount of the trust fund not depleted, the claimant is entitled to the lowest intermediate balance in the account.

*Connecticut General Life Ins. Co. v. Universal Ins. Co.,* 838 F.2d 612, 619 (1st Cir.1988).

■ The Court declines to apply the lowest intermediate balance rule to this case. Procedurally, Defendant did not make or preserve its position on this argument. Defendant did not file a proposed instruction, or request an instruction, on the lowest intermediate balance rule ten (10) working days

---

**5.** Applying the lowest intermediate balance rule in this case, it appears that, except for one deposit in the amount of $6008.18 made on February 8, 1994, none of the proceeds traced from Foreman's sale of the cattle purchased from Wagner Livestock remained in Foreman's account at the time of setoff.

| Date | Deposits into Foreman Account | Balance in Foreman Account |
|---|---|---|
| 2–1–94 | $152,000.00 | $381,675.92 |
| 2–4–94 | 27,510.12 | (191,298.77) |
| 2–8–94 | 31,000.00 | 211,893.43 |
| 2–9–94 | —— | (648,462.33) —account |
| 2–11–94 | 6,008.18 | closed— |

Trial Ex. 23, 150 & 151. With the exception of the $6008.18 deposit on February 11, because of the overdraft on February 9, all of the proceeds traceable from Wagner Livestock to Foreman to IBP to Norwest were paid out of Foreman's account before the account was closed and the funds remaining in it offset on February 11, 1994. Norwest argues that Wagner Livestock, therefore, only had rights in $6008.18 of the funds used to set off Foreman's debt.

Chronologically, the evidence showed:

| | |
|---|---|
| 2–1–94 | Foreman purchased 288 head of cattle from Wagner Livestock |
| 2–1–94 | IBP advanced Foreman $152,000.00 on 2–1–94 purchase |
| 2–1–94 | Foreman deposited $152,000.00 into his account at Norwest |
| 2–1–94 | IBP killed 50 head from the 2–1–94 purchase |
| 2–2–94 | IBP killed 155 head from the 2–1–94 purchase |
| 2–4–94 | IBP paid Foreman $27,510.12 as balance owed on 2–1–94 purchase |
| 2–8–94 | Foreman purchased 87 head of cattle from Wagner Livestock |
| 2–8–94 | IBP advanced Foreman $31,000.00 on 2–8–94 purchase |
| 2–8–94 | Foreman deposited $31,000.00 into his account at Norwest |
| 2–9–94 | IBP killed 44 head from 2–8–94 purchase |
| 2–11–94 | IBP paid Foreman 6008.18 as balance owed on 2–8–94 purchase |
| 2–11–94 | Foreman deposited $6008.18 into his account at Norwest |
| 2–11–94 | Norwest placed legal hold on Foreman's account* |

Trial Ex. 23, 150 & 151.

* In attempting to ascertain the order of events on February 11, it appears from a handwritten note on the bottom of the legal hold notice, the notice was faxed at 4:20 pm on February 11, 1994. Exhibit 151 contains the front of Foreman's deposit slip for February 11 listing the $6008.18 check from IBP. The back of that deposit slip which would have a time-date stamp on it was not admitted into evidence. Exhibit 151.

before trial, as the Court requires. *See* this Court's Order dated June 20, 1995, Doc. 29 at ¶ 3. The issue was not raised until the instructions were being settled at the close of evidence.

■ Even if the issue had been timely raised, the Court would decline to follow the rule in the absence of any authority that such is the law in South Dakota. Defendant has cited no authority to the Court to support the argument that the lowest intermediate balance rule would be applied in South Dakota, and the Court was unable to locate any case in which South Dakota has applied the rule. In fact, the Court finds that the lowest intermediate balance rule is inconsistent with South Dakota statute and case law setting out liability and damages for conversion, as instructed by the Court. Doc. 45, Jury Instruction ## 11 & 18; S.D.C.L. § 21–3–3. To apply the rule would be adding another element to the South Dakota law of conversion by specifying a separate and artificial method for determining damages for some types of converted property.[6]

■ Furthermore, even if South Dakota would apply the lowest intermediate balance rule to trace proceeds, the Court is doubtful that it could be applied under these facts. The Court earlier identified at least four situations where tracing commingled proceeds has been necessary: bankruptcy, trust accounts, secured transactions [7] and forfeitures. This case obviously only implicates secured transactions. However, while Norwest argued it held a security interest in Foreman's cattle, the jury found, based on this Court's Instruction No. 12, that Nor-

west's lack of good faith defeated any claim of Norwest that it had a superior right to the cattle or the proceeds from the sale of the cattle because of its security interest. Doc. 45, Jury Instruction # 12. Consequently, Norwest's security interest did not attach to any proceeds that made their way into Foreman's account.

■ Wagner Livestock moves for prejudgment interest from February 11, 1994, the date that Foreman's account was closed, until the date of entry of judgment, August 10, 1995. Doc. 68. Wagner Livestock demanded pre- and post-judgment interest on the conversion count in its complaint. Doc. 1 at Ex. B. Wagner Livestock argues that prejudgment interest pursuant to S.D.C.L. § 21–1–13.1 is mandatory and "not discretionary in any sense." Doc. 70 at 5. The wording of § 21–1–13.1 is that "any person *entitled to* recover damages ... *is entitled to recover* interest...." S.D.C.L. § 21–1–13.1 (1995) (emphasis added). The language of the applicable South Dakota interest statute, S.D.C.L. § 21–1–13.1, does on its face appear to be mandatory. The South Dakota Supreme Court recently approved an award of interest under § 21–1–13.1 and stated:

> South Dakota allows prejudgment interest only when the "exact amount of damages is known or readily ascertainable." *City of Sioux Falls v. Kelley,* 513 N.W.2d 97, 112 (S.D.1994). When damages are determined by the trier of fact, it is within the trial court's discretion to make such an award.

---

**6.** South Dakota's damage statute for the tort of conversion states:

The detriment caused by the wrongful conversion of personal property is presumed to be:
(1) The value of the property at the time of the conversion, with the interest from that time;
(2) ... [T]he highest market value off the property at any time between the conversion and the verdict, without interest, at the option of the injured party;
(3) A fair compensation for the time and money properly expended in pursuit of the property.
S.D.C.L. § 21–3–3 (1987).

**7.** In support of its argument, Wagner Livestock implies that the lowest intermediate balance rule

is not applicable to commingled proceeds from the sale of secured collateral. Doc. 57 at 20. The Court finds that the lowest intermediate balance rule is applicable to tracing commingled funds in secured transactions. *See Harley–Davidson Motor Co. v. Bank of New England,* 897 F.2d 611 (1st Cir.1990) (discussing use of lowest intermediate balance rule to trace proceeds from sale of secured collateral); *Universal C.I.T. Credit Corp. v. Farmer's Bank of Portageville,* 358 F.Supp. 317, 325 (E.D.Mo.1973) (using lowest intermediate balance to trace funds from sale of secured collateral); B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 10.3 (1980).

*Fanning v. Iversen,* 535 N.W.2d 770 (S.D. 1995). The first sentence quoted is based on the previous statute, S.D.C.L. § 21–1–11, which, under the provisions of § 21–1–13.2, is not applicable to actions commenced after July 1, 1990. The substance of neither sentence in the above quotation is in S.D.C.L. § 21–1–13.1. However, following the holding of the South Dakota Supreme Court, since the present damages of $216,518.30 were determined by the trier of fact, it is in the trial court's discretion to award interest. That the exact amount of damages was not known or ascertainable until trial is shown by the damages claimed by Plaintiff, Doc. 1 at Ex. B, and the Court's damages instruction and the verdict returned. *See* Doc. 45, Jury Instruction # 18; Doc. 47. It should also be noted that S.D.C.L. § 21–1–13.1 provides for interest from the day that the loss occurred—in this case the time of the conversion which was the date that Foreman's account was setoff by Norwest. Prejudgment interest in this case is awarded at the Category B rate specified in S.D.C.L. § 54–3–16, which is 12% through June 30, 1994, and 10% beginning July 1, 1994, up to and including the date of the verdict, August 9, 1995. Accordingly,

IT IS ORDERED:

(1) That Plaintiff's Motion to Strike Defendant's Reply Brief, Doc. 61, is denied.

(2) That Defendant's Motion for Judgment as a Matter of Law, Doc. 52, is denied. Judgment is granted for Dale Meyer, d/b/a Wagner Livestock Market, and against Norwest Bank Iowa in the amount of $216,518.30 as found by the jury.

(3) That Defendant's Objection to Plaintiff's Bill of Costs, Doc. 60, is sustained and the following items in Plaintiff's Bill of Costs are not allowed:

(a) The deposition of Donald Foreman taken May 24, 1994 in the amount of $176.00.

(b) The deposition of Mike Rickert taken July 29, 1994, in the amount of $47.70.

(c) The deposition of Thomas Cleveland taken March 23, 1995, in the amount of $76.10.

(d) The depositions of Brent Wilber, Robert Gagne, and Gail Fisher taken June 20, 1995, in the amount of $136.60.

(e) In-house copies in the amount of $286.81. The Court does allow $237.22 in copying costs.

(4) Plaintiff's Motion for Entry of Prejudgment Interest, Doc. 68, is granted, and prejudgment interest in the amount of $33,990.36 is allowed.