## MISSOURI RIVER TELEPHONE CO. v. CITY OF MITCHELL.

Under Rev. Code Civ. Proc. §§ 276, 277, providing that on the trial of an issue of fact by the court the decision shall be in writing, and that the facts found and the conclusions shall be separately stated, there must be a finding on each material issue of fact; but the only conclusion required is the opinion of the court as to what relief either party is entitled to on the facts, and, where the relief granted is warranted by the facts, it is not material whether the right reasons, or any reasons, were assigned for granting it.

Where, in a suit by a telephone company to restrain a city from interfering with the construction and operation of a telephone line in the city, the court found that the city had given the company a consent to erect and operate a telephone line in the city, that the company had acted on the consent by erecting a telephone line, that the city was without authority to remove the line from the city and prevent

the company from operating the same, and that·the company was en-·
titled to a judgment against the city restraining it from preventing
the company from constructing, maintaining, and operating the line
according to the consent, an additional finding that, if the city were
allowed to carry out its intention of debarring the company from ope-
rating its line within the city, the company would be financially dam-
aged, that it would be difficult to ascertain the amount of the com-
pensation, and that the company was without adequate remedy at law,
was immaterial, since the court on the other findings was authorized to
grant relief.

Const. art. 10, § 3, providing that no telephone line shall be
constructed within·the limits of any city without the consent of its
local authorities, limits the power of the state Legislature in grant-
ing rights to telephone companies, but does not grant legislative power
to the local authorities; and, though the Legislature may not author-
ize the construction of a telephone line in any city without the lat-
ter's consent, the city has no power to impose any conditions or estab-
lish any regulations other than those permitted by the Legislature.

Under Rev. Civ. Code, § 554, authorizing the owners of tele-
phone lines to use public grounds, streets, and highways, subject to
control of the proper municipal authorities, etc., a domestic corpora-
tion engaged in buildiig and operating a telephone system may con-
struct its lines over public grounds, streets, and highways, subject to
control of the proper municipal authorities, except that no telephone
line shall be constructed within a city without the consent of its
local authorities, as provided by Const. art. 10, § 3, and subject to
article 6, § 12, prohibiting the Legislature from conferring an irre-
vocable grant to telephone companies.

The right of a city to control a·telephone company maintaining a
line within its limits results from statute, and not from the ordinance
or action of local authorities, by which the consent is given to the
company to operate a line in the city; and a consent once given can-
not be revoked.

Where a municipal corporation has power to act, it may estop
intself by its conduct and so a city may be estopped to deny the valid-
ity of an ordinance which it has led others to believe was legally
adopted.

A domestic telephone company applied to a city for a permit to
construct and operate its line in the city. At a special meeting of
the council, at which the mayor and six of the eight aldermen were
present, an ordinance granting the permit was presented and read the
first time by unanimous consent. At the next regular meeting the
ordinance was adopted. It was approved by the mayor and duly re-
corded and published. Immediately thereafter the company, relying
on the permission, began the construction of a telephone line along
the route designated by the city officials, and completed an equipment
for the establishment of a telephone system. The special meeting of

the council was irregular, in that notice of it had not been given to the absent aldermen, and it was held pursuant to an ordinance relating to special meetings which had never been legally adopted. **Held,** that the city was estopped from contesting the validity of the ordinance, and could not withdraw the consent to the company.

(Opinion filed, April 9, 1908.)

Appeal from Circuit Court, Davison County. Hon. FRANK B. SMITH, Judge.

Action by the Missouri River Telephone Company against the city of Mitchell. From a judgment for plaintiff, defendant appeals. Affirmed.

*Preston & Hannett,* for appellant.

Statutory provisions with respect to the calling of a special meeting are considered of a mandatory nature, and have been deemed necessary in order to prevent hasty, ill-advised and ill-considered legislation. Abbott Municipal Corporations, Vol. 2, pg. 1284; Harding v. Vandewater, 40 Cal. 77; The Paola & Fall River Ry. Co. v. Commissioners, 16 Kan. 302; Lord v. City of Anoka, 30 N. W. 550; State v. Board of Commissioners, 34 Pac. 1057. Every member of a municipal council is entitled to reasonable notice of special meetings, and that no important action can lawfully be taken at such meeting, unless such notice has first been given, or unless the members not notified actually attended and participate in the business of the meeting. Abbott Municipal Corporations, Vol. 2, page 1285; In Kleimenhagen v. Dixon, 100 N. W. 826; McQuillin Municipal Ordinances, Sec. 10; Land Co. v. Jellico, 52 S. W. 999. The city has no power to impose any conditions or establish any regulations other than those permitted by the Legislature. Board of Education City of Atchison v. DeKay, 13 S. C. R. 707; Merchants Union Barb Wire Co. v. C. R. I. & P. R. R. Co., 28 N. W. 495; City of Green Bay v. Branus, 6 N. W. 503; Board of Mayor, etc., v. East Ten. Tel. Co. 53 C. C. A. 135; Illinois Trust & Savings Bank v. City of Arkansas City, 22, C. C. A. 185; National Tube Works v. City of Chamberlain, 5 Dak. 54. The doctrine of estoppel has often been applied when the question of the validity of an ordinance has been raised. * * * So the rule of estoppel applies with full force to the municipal corporation it-

self. Thus where the ordinance is published in pamphlet form by public authority with the other ordinances of the municipality the city cannot question its validity, on the ground that it was not validly adopted. Its publication estops the city from so doing. McQuillin Municipal Ordinances, Sec. 270. Article VI, State Constitution, in Bill of Rights, provides: "No law shall be passed * * * making any irrevocable grant, or privilege, franchise, or immunity." The foregoing is a positive prohibition against the passage of an irrevocable grant or franchise. Suppose these ordinances were otherwise valid, then the court would, if allowed to stand, read into each the reservation of the right of revocation, just the same as if the ordinance had provided therein this constitutional provision, that the city reserve the right to revoke said ordinance at any time. Greenwood v. Freight Co., 105 U. S. 13; Shields v. Ohio, 95 U. S. 319.

*A. E. Hitchcock,* for respondent.

That the City of Mitchell by its action in permitting the plaintiff by a formal vote to place the telephone lines in the city limits and thereby inducing the plaintiff to expend a number of thousand of dollars upon this privilege granted entered into a contract with the plaintiff which it cannot thus arbitrarily rescind. Michigan Telephone Co. v. St. Joseph, 47, L. R. A. 91; Northwestern Telephone Exchange Co. v. Minneapolis, 53 L. R. A. 176; Board of Mayor, etc., v. East Tenn. Telephone Co. 53 C. C. A. 135; Louisville Trust Co. v. City of Cincinnati, 22 C. C. A. 341.

HANEY, P. J. This is an action to restrain the defendant from interfering with the construction and operation of a long distance telephone line within its limits, except by reasonable regulation and control. The decision of the learned circuit court, containing numerous findings of fact, concludes as follows: "(1) That the action taken by the defendant, the city of Mitchell, through its city council, gave the plaintiff consent and privilege for the plaintiff to erect and operate long-distance telephone line within said city, and that after said consent and privilege was given by the said defendant to the plaintiff, and the plaintiff had acted upon said consent and privilege by erecting said telephone line and

expending large sums of money therefor, the defendant is without authority of law to remove said telephone line from said city and prevent the plaintiff from operating the same according to the form and manner attempted by the defendant; (2) that the plaintiff is entitled to a judgment against the defendant permanently restraining the defendant from preventing the plaintiff from constructing, maintaining, and operating said line according to the consent and privilege which has been granted by the defendant to the plaintiff, and the plaintiff is entitled to recover its costs and disbursements in this action, and that defendant's counterclaim be dismissed." After entry of judgment and notice of intention to move for a new trial, but before such motion was heard, the court, upon plaintiff's application and upon notice to the defendant, amended its decision by adding to the findings of fact the following: "The court further finds that the plaintiff in this action, if the defendant be allowed to carry out its intention in debarring the plaintiff from operating its said telephone line within the said city of Mitchell, will be financially damaged, and that it would be extremely difficult to ascertain the amount of the compensation which would afford the plaintiff adequate relief for such damage, and the plaintiff is without remedy at law in the premises."

Upon the trial of an issue of fact by the court, its decision must be given in writing. In giving the decision, the facts found and the conclusions must be separately stated. Rev. Code Civ. Proc. §§ 276, 277. There should, of course, be a finding upon each material issue of fact; but the only conclusion required is the opinion of the court as to what relief either party is entitled to upon the facts established by the pleadings and evidence. If the relief granted is warranted by the established facts, it is not material whether right reasons, or any reasons, are assigned by the trial court for granting it. The best form of decision by a trial judge is a statement of the facts established by the pleadings and evidence, followed by the conclusion that upon the facts so found the plaintiff (or defendant, as the case may be) is entitled to judgment, specifying in general terms the nature of the judgment. Whether, in the case at bar, it would be extremely difficult to ascertain the amount of compensation which would afford adequate

relief if the plaintiff was unlawfully prevented from continuing to operate its telephone in the defendant city, whether it had an adequate remedy at law, and was therefore not entitled to the relief demanded and granted, was a conclusion of law, depending upon the established material facts, and necessarily involved in the decision that plaintiff was entitled to a permanent injunction. The amendment was, therefore, wholly immaterial, and not reversible error, even if the court was without power to amend its decision by adding thereto an inadvertently omitted finding of fact—a proposition upon which no opinion is expressed.

The argument of appellant's counsel in support of the contention that the facts found by the trial court do not sustain its conclusions of law is founded upon a misapprehension as to the source of the plaintiff's rights. Its franchise was derived from the state, not from the city. It is a corporation created by and existing under state laws. The nature and extent of its rights depend on the will of the Legislature, limited, so far as this case is concerned, only by the provision of the state Constitution that no telephone line shall be constructed within the limits of any city without the consent of its local authorities. Const. S. D. art. 10, § 3. While this provision limits the power of the state Legislature, it grants no legislative power to the municipal council. Though the Legislature may not authorize the construction of a telephone line in any city without the latter's consent, the city has no power to impose any conditions or establish any regulations other than those permitted by the Legislature. Adding to the statute the constitutional provision regarding consent, the law applicable to the issue here involved is expressed in the following language: "There is hereby granted to the owners of any telegraph or telephone lines operated in this state the right of way over lands and real property belonging to the state, and the right to use public grounds, streets, alleys and highways in this state, subject to control of the proper municipal authorities as to what grounds, streets, alleys or highways said lines shall run over or across, and the place the poles to support the wires are located. The right of way over real property granted in this act may be acquired in the same manner and by like proceedings as provided for railroad corporations:" Pro-

vided, however, that no telephone line shall be constructed within the limits of any city without the consent of its local authorities. Rev. Civ. Code, § 554; Const. S. D. art. 10, § 3.

Assuming that the local authorities of the defendant city might have arbitrarily refused to admit the plaintiff, if consent to enter the city was given, the plaintiff was subject to municipal control only as to what grounds, streets, alleys, and highways its line should occupy, and as to what place its poles should be located. Consent having been given, the right of the city to control the telephone company results from the statute, and not from the ordinance, resolution, or action of the local authorities by which the consent is manifested; and consent once given cannot be revoked. Appeal of City of Pittsburg, 115 Pa. 4, 7 Atl. 778; State v. Mayor, 49 N. J. Law, 303, 8 Atl. 123. The right of a telephone company to construct its lines anywhere in the state includes the right to enter any city with the consent of its local authorities, and when such consent has been obtained the company is subject only to such rules and regulations as the Legislature may prescribe or authorize the council to prescribe. The right thus conferred upon a telephone company by the state—its franchise—is, of course, subject to control by the Legislature, which is prohibited from making any irrevocable grant of that nature (Const. S. D. art. 6, § 12.) The Legislature may extend or restrict the powers of cities with respect to these companies as its wisdom may dictate; but no city can impose any conditions or enforce any regulations other than those authorized by the Legislature. And it is fortunate that such is the law; the construction, operation, and management of telephone lines, especially long-distance lines, being matters in which all the inhabitants of the state have a constantly increasing interest. So the only real issue in this case is whether the local authorities of the defendant city consented to the construction of plaintiff's line within the city limits.

Touching this issue the material facts are undisputed. In May, 1904, plaintiff applied for permission to construct and operate its lines in the defendant city. Pursuant to such application, at a special meeting of the council, on May 21, 1904, at which the mayor and six aldermen were present (the council being composed

of the mayor and eight aldermen), an ordinance granting the desired permission upon conditions not material on this appeal, was presented and read the first time by unanimous consent of the members present. At a regular meeting on June 6, 1904, at which all the members of the council were present, this ordinance received its second reading and was put upon its final passage; seven aldermen voting for and one against it. Having been approved by the mayor June 6, 1904, it was duly recorded and published. Immediately after its passage and approval the plaintiff, relying upon the permission therein granted, began constructing a telephone line from Armour to Mitchell, a distance of about 45 miles, and prior to any other action by the city had erected telephone poles and strung wires thereon for a distance of about 25 miles. On July 28, 1904, another ordinance granting plaintiff the same privilege with somewhat different conditions, and repealing the former one, was passed and approved without notice to the plaintiff. In November, 1904, the plaintiff applied to the city, through its regularly constituted committee, for directions as to the location of its poles, pursuant to which application the committee, in writing, fixed such location and delivered a copy of the writing to the plaintiff. Immediately after receiving these directions · the plaintiff erected a line of poles along the route so designated by the committee, and brought to the city a complete equipment for establishing a long-distance booth therein; the plaintiff's line at this time having been constructed from Armour to Mitchell. On May 1, 1905, still another ordinance was passed and approved, purporting to repeal the one last above mentioned, and defendant's street and alley committee was authorized to remove plaintiff's poles from the streets and alleys of the city. Notice of this action having been given the plaintiff, the present action was begun.

No particular mode of manifesting municipal consent to the construction of a telephone line is prescribed by the Constitution or statutes. So far as the Constitution is concerned, such consent may be either express or implied. Where a municipal corporation has power to act, it may estop itself by its conduct as well as a natural person. 20 Am. & Eng. Ency. Law, 1182. And a municipality may be estopped to deny the validity of an ordinance which

it has led others to believe was legally adopted. People v. Maxon, 139 Ill. 306, 28 N. E. 1074. The city council having authority to consent to the construction of plaintiff's line, and no particular mode of expressing such consent having been prescribed, it is clear that the action taken by the council at the regular meeting on June 6, 1904, entitled the plaintiff to enter the defendant city. Assuming, however, that consent could only be given by the adoption of an ordinance, it is equally clear that plaintiff cannot be deprived of the rights resulting from the passage and approval of the first ordinance, and it is wholly immaterial what action was subsequently taken by the city. As heretofore stated, consent having been once given and acted upon by the plaintiff, it could not be revoked, and the municipality could exercise no control over the plaintiff other than that permitted by the state law, which certainly does not authorize the council to exclude the plaintiff from the city.

The only objection to the first ordinance is the fact that it received its first reading at a special meeting, notice of which, it is alleged, was not given to the absent members, and which was held pursuant to an ordinance relating to special meetings under which the council had acted for several years, but which, it is claimed, was never legally adopted. Conceding these irregularities to have existed, the city is not in position to assert them to the manifest injury of the plaintiff. It is estopped from doing so by the conduct of its council at the regular meeting, when the first ordinance was passed, all the aldermen being present; by the conduct of its mayor in indorsing his approvel, thereby certifying under the sanction of his official oath that the ordinance was legally adopted; by the conduct of its committee in designating the location of the plaintiff's poles; and by the publication of the ordinance. That the plaintiff in good faith expended large sums of money, relying upon the validity of the ordinance, is undisputed. That the municipal authorities intended to consent to the construction of the plaintiff's line is established beyond the possibility of a doubt. The mayor and council were authorized to give the required consent, they led the plaintiff to believe they had given it, and by every rule of right and justice they should not now be per-

mitted to avoid the consesquences of their action by asserting technical objections to the method of their procedure.

The conclusions of the learned circuit court were clearly correct, and its judgment must be affirmed.

FULLER, J., takes no part in this decision.