# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2793

_____

| | | |
|---|---|---|
| County of Harding, South Dakota, | * | |
| a political subdivision of the State | * | |
| of South Dakota, by and through | * | |
| its Board of Commissioners; | * | |
| Casey Olson, for himself and on | * | |
| behalf of all the other similarly | * | |
| situated taxpayers of Harding | * | |
| County, South Dakota, | * | |
| | * | |
| Plaintiffs/Appellees, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of South Dakota. |
| | * | |
| Ron Frithiof, Kim Hollrah, | * | |
| Melody Harrell, | * | |
| | * | |
| Defendants/Appellants, | * | |
| | * | |
| Fred Debrovner, Unidentified | * | |
| Defendants A through E, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: December 14, 2006
Filed: April 5, 2007

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Ron Frithiof, Kim Hollrah, and Melody Harrell appeal the district court's determination that a fossil-collecting lease agreement between Frithiof and Harding County, South Dakota, was invalid because the County Commission did not hold a public hearing before approving the lease. Frithiof, Hollrah, and Harrell also appeal the dismissal of their unjust enrichment counterclaim against the County. We reverse and remand for further proceedings.

I

On November 9, 2000, Harding County reached a five-year agreement with Ron Frithiof allowing him to collect, prepare, and sell fossil vertebrates he might find on 200 acres of the County's land in the badlands of western South Dakota. Prior to negotiating the lease, Frithiof had been excavating fossils in the same general area pursuant to a lease agreement negotiated with Gilbert Cattle Company and Gary Gilbert, the adjacent landowner. Gilbert Cattle Company leased the 200 acres from the County for grazing purposes.

The "Rent" provision of the lease did not provide for a fixed annual payment, but instead indicated Frithiof would pay:

> [T]en percent (10%) of the actual selling price of any fossils collected from the Lessor(s) property and which are sold by the Lessee for a sum exceeding One Thousand and No/100 Dollars ($1,000.00). Lessee will pay such sum to Lessor(s) within thirty (30) days of such sale and receipt of the purchase price by Lessee.

This "Rent" provision is identical to the payment terms used in one of two exemplar leases the County provided Frithiof's attorney during negotiations for the lease, specifically, a fossil-collecting lease the County reached with an individual named Mike Triebold in 1996.

On August 19, 2004, the County brought suit against Frithiof and his partners in federal district court. The suit alleged Frithiof excavated the fossil remains of a juvenile Tyrannosaurus rex – referred to as Tinker – from the leased land prior to the year 2000,[1] secured an $8.5 million offer for Tinker, and did not advise the County of the discovery during the lease negotiations "despite having a duty to disclose such information." The suit contained nine counts sounding in actual fraud, constructive fraud, conversion, trespass, civil conspiracy, rescission, breach of the duty of good faith and fair dealing, breach of fiduciary duty, and one count for a declaratory judgment. The declaratory judgment count alleged in part "because the Commission failed to comply with various rules governing the sale and/lease (sic) of property owned by County when it executed the Second Lease,[2] the Second Lease is void and/or voidable." Frithiof and his partners denied the County's allegations and brought a counterclaim for breach of contract and unjust enrichment/quantum meruit.

Frithiof and his partners brought a motion for summary judgment arguing they did not commit fraud and had title to Tinker pursuant to the valid and enforceable lease.[3] The County filed a motion for partial summary judgment arguing the agreement was invalid on three grounds: a) the agreement was actually a contract for the sale of public property, not a lease, and invalid because the County did not follow statutory requirements for the sale of public property; b) if a lease, the County did not follow the public hearing requirements under South Dakota Codified Law § 7-18-32

---

[1]Under the terms of the lease, its payment terms and other provisions would still apply "[i]n the event it is determined that Lessee has located, discovered, or removed any fossils on the Leased Property . . . prior to the date of this lease[.]"

[2]The reference to the "Second Lease" is to the lease executed on November 9, 2000.

[3]The lease provided: "Legal title to this fossil specimen located and/or collected by the Lessee on the Lessor property shall be in the Lessee, whether or not removed from the property."

rendering the lease void *ab initio*; and c) the lease should be rescinded based upon a mutual mistake of law.

With respect to the second argument, § 7-18-32 requires the County to hold a public hearing before authorizing a lease "for a term exceeding one hundred twenty days and for an amount exceeding five hundred dollars annual value."[4] In the district court, the County contended the lease had an annual value of more than five hundred dollars because Frithiof removed a portion of the fossils before the lease was negotiated, and then later received an $8.5 million offer for their sale. Frithiof countered no public hearing was required because the lease should be construed as of the date on which it was made, and as of that date the lease's value to the County was highly speculative and contingent upon the sale of fossils found on the land, and no sale had occurred. He further contended the County did not present any evidence to prove the value of the contingency. In the alternative, he contended the failure to hold a public hearing did not render the lease void *ab initio* but merely meant the County exercised its power irregularly and was estopped from rescinding the lease under South Dakota law. See Mellette County v. Arnold, 75 N.W.2d 641, 643 (S.D. 1956) (distinguishing between the irregular exercise of a granted power and a total absence of power, stating: "When an act or contract is beyond the power conferred upon a county, it cannot be estopped. When, however, a county has power to act, it may be estopped by the acts of its agents although the method of exercising the power was irregular.").

The district court granted the County's motion for partial summary judgment and denied Frithiof's motion. The district court focused on the County's argument regarding the public hearing requirements of § 7-18-32. Although the County's complaint alleged Frithiof received an $8.5 million offer for the sale of Tinker, the

---

[4]In contrast, § 7-18-31 of the South Dakota Codified Laws generally allows the County to "lease its county-owned property," thus indicating a public hearing is not required for leases other than those specified in § 7-18-32.

district court noted he denied receiving such an offer in his answer. Instead, the district court indicated Frithiof did not contest federal diversity jurisdiction which required the amount in controversy to be $75,000 or more, and had alleged a counterclaim of unjust enrichment in the amount of $200,000. Based upon those two facts, the district court concluded it was "not unreasonable to place the value of the contract as an amount exceeding five hundred dollars." The district court held the County's failure to hold a public hearing rendered the lease invalid *ab initio*. Pursuant to the order granting the County's motion for partial summary judgment, a final judgment was entered in the County's favor, which also resulted in a dismissal of Frithiof's counterclaim for unjust enrichment.

Frithiof and his partners filed a timely appeal. On appeal, they contend the public hearing requirements of § 7-18-32 do not apply because the County did not present any evidence of the value of the lease at the time it was entered. In the alternative, they contend the County's failure to hold a public hearing was merely an irregular exercise of the County's power and the County should be estopped from rescinding the lease. Finally, Frithiof contends the district court erred when it entered full judgment in the County's favor without giving notice the counterclaim would be dismissed, or independently addressing the merits of the counterclaim.

II

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004).

Frithiof first contends the district court erred in determining the lease was invalid for lack of a public hearing under § 7-18-32 because the County presented no evidence of the value of the lease at the time it was entered. We agree. Section 7-18-32 does not require a public hearing unless a lease is "for an amount exceeding five

hundred dollars annual value." Because the statute does not further define the term "value," we understand it to mean fair market value. In addition, we agree with Frithiof's contention the relevant time period for analyzing the fair market value of the lease requires it to be construed as of the date on which it was made, without regard to events which may have occurred subsequent to its execution.[5] Thus, the value relevant to determining whether a public hearing was required is the amount for which the County could have sold the lease on November 9, 2000 (as calculated on an annual basis), i.e., its fair market value on the day it was signed.

Our view that the relevant inquiry requires us to determine fair market value on the day the lease was signed is buttressed by one apparent purpose of § 7-18-32, which is to ensure public assets are not used unfairly to advantage private interests,

_____

[5]Although no South Dakota cases are directly on point on this issue, a plethora of cases from other jurisdictions establish "it is well settled that a contract must be construed as of the date on which it was made [and] cannot be based upon events occurring subsequent to [its] execution." Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc., 873 So. 2d 1091, 1101 (Ala. 2003) (internal quotation omitted); see also Texas v. Am. Tobacco Co., 463 F.3d 399, 407 (5th Cir. 2006) ("[A] contract is viewed as of the time it was made and not in light of subsequent events.") (applying Texas law); Warner Robins Supply Co. v. Malone, 238 S.E.2d 709, 712 (Ga. Ct. App. 1977) ("The surrounding circumstances must be considered as of the time the contract is made and not in the light of subsequent events."); Allright Auto Parks, Inc. v. Berry, 409 S.W.2d 361, 364 (Tenn. 1966) ("It is the duty of this Court to construe contracts as of the date of their making. Our exegesis of such agreements cannot be based upon events occurring subsequent to their execution."); M.H. Walker Realty Co. v. Am. Sur. Co. of N.Y., 211 P. 998, 1005 (Utah 1922) ("[W]e must consider [a contract's] terms in the light of conditions as they existed at the time the contract was entered into and not in the light of subsequent conditions.").

We have no reason to believe the South Dakota Supreme Court would disagree with these other jurisdictions if faced with this issue. See Novak v. Navistar Int'l Transp. Corp., 46 F.3d 844, 847 (8th Cir. 1995) ("If state law is unsettled, it is our duty to apply the rule we believe the South Dakota Supreme Court would follow.").

that is, to prevent the County Commission from entering sweetheart deals with select individuals. The circumstances under which § 7-18-32's meaning of value is disputed in this case are somewhat unusual; we expect the more common situation in which a dispute about value would arise might be where a taxpayer sues the County alleging someone received a sweetheart deal without the benefit of a public hearing. In such a situation, it would be incumbent upon the County to show it received adequate compensation, i.e., fair market value. Similar statutes in other states explicitly refer to "fair market value." See, e.g., Neb. Rev. Stat. § 23-107.01 (providing a "county board has power to sell or lease real estate owned by the county and not required for county purposes at a fair market value [after] an open and public hearing"); W. Va. Code § 20-1A-5 (requiring state agencies to hold a public hearing prior to the sale or lease of land or title to minerals, at which the evidence must establish by a preponderance that an appraisal of the item to be transferred "reflect[s] the true, fair market value"); see also Salt Lake County Comm'n v. Salt Lake County Attorney, 985 P.2d 899, 909-10 (Utah 1999) (discussing the policy of "preventing government from in any way using public assets for private purposes" which requires counties to receive "fair market value" in any transfer of an interest in public property). Thus, even though the circumstances of this case are somewhat unusual, in that the County itself is attempting to show a public hearing should have been held, it is still incumbent upon the County to prove the fair market value of the lease at the time it was entered.

The three allegations relied upon by the district court or the County as proof of the lease's fair market value at the time it was entered are: 1) the alleged $8.5 million offer for the sale of Tinker; 2) the fact diversity jurisdiction depends on the amount in controversy being over $75,000; and 3) the allegation the unjust enrichment counterclaim has a value of $200,000. We address each of these contentions in turn.

## A.  The $8.5 Million Offer

Although the district court did not rely upon the $8.5 million offer for the sale of Tinker, the County does.  On appeal, Frithiof does not deny receiving an $8.5 million offer for the sale of Tinker,  but argues the offer is irrelevant because it was received subsequent to the date the lease was entered and never consummated.  We agree.  As discussed above, the relevant inquiry is the fair market value of the lease at the time it was entered, without regard to events which may have occurred subsequent to its execution.  Because the $8.5 million offer for the sale of Tinker occurred subsequent to the lease's execution, the County cannot rely upon it to prove the fair market value of the lease.

The County's reliance upon the subsequent offer to prove the fair market value of the lease is based upon two flawed premises.  First, the County appears to equate the value of a realized contingency with the value of the contingency itself.  Because the rent provision in the lease is based on a contingency, the lease's fair market value is the value of the future chance fossils exceeding $1000 will be discovered on the County land and sold, as reflected by the right to receive ten percent of their sale price.  Equating the value of the chance with the value of the realized contingency is somewhat analogous to equating the value of a lottery ticket with the value of the jackpot.  The two are not the same.  Similarly, the value of a chance at discovering dinosaur fossils on a particular parcel of land is not the same as the value of the dinosaur fossils after they have been discovered.  In this case, the County failed to present any competent evidence of the value of the contingency at the time the lease was signed, such as testimony from an appraiser familiar with the value of fossil-collecting leases, who could appraise the value of the right to receive ten percent of the sale price of any fossils in excess of $1000 that might be found on this particular parcel of County land.

At oral argument, the County took its argument regarding the contingent nature of the lease one step further by arguing § 7-18-32 should be read as requiring a public hearing whenever a contingent lease has the *potential* of resulting in future payments exceeding five hundred dollars annual value. We disagree. Section 7-18-32 only requires a public hearing when a lease is for a term over 120 days and "for an amount exceeding five hundred dollars annual value." The statute does not require a public hearing whenever future payments under the lease may *potentially* exceed five hundred dollars annual value. Certainly, nothing compelled the County to introduce a future contingency into this lease. The fact the County complicated the determination of the lease's fair market value by introducing a future contingency did not mean there was no ascertainable present value of the lease, and did not absolve the County of the duty to determine present value in order to determine whether a public hearing was required.

For example, if the County agreed to lease the same 200 acres to a rancher for one year and decided the rancher's payment would be any calves which two of his cows produced the following year, the County would still have the obligation to determine the *present* value of the lease by considering the chance the two cows would have calves, the number of calves they might have, and the market price those calves might bring in the future. The County could not wait until the following year to evaluate the lease at $0 because the two cows did not have calves, or at $1000 because the cows each had two calves.

The County's second flawed premise is the notion the fair market value of the lease is affected by the information known to Frithiof at the time the lease was negotiated, which the County alleges he had a duty to disclose. We disagree. Whether Frithiof acted fraudulently, whether he had a duty to disclose certain information during the negotiations for the lease which he did not, and whether his alleged fraud may give rise to an independent basis for invalidating the lease, are all issues that remain to be resolved in the district court, and are not before us at this time. For purposes of determining whether a public hearing was required under § 7-18-32,

-9-

we cannot presume the presence of fraud before the County proves such fraud. Thus, at this juncture, our analysis must be limited to what the County actually knew, without consideration of any additional information it alleges Frithiof had a duty to disclose.[6]

### B. The $75,000 Amount in Controversy

The district court relied upon Frithiof's failure to contest the court's diversity jurisdiction, and concomitant amount in controversy, as proof the fair market value of the lease exceeded $500 a year. This reliance is misplaced for two reasons.

First, the alleged amount in controversy cannot substitute as proof of the actual amount in controversy. Such an approach is the epitome of circular reasoning. A party cannot prove up its case simply by referring back to its allegations regarding the amount in controversy. Cf. Zhuang v. Datacard Corp., 414 F.3d 849, 854 (8th Cir. 2005) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon [ ] mere allegations or denials." (quoting Fed. R. Civ. P. 56(e))).

Second, in this particular case, the fair market value of the lease is not the same as the amount in controversy in any event. The amount in controversy relates to the

---

[6]We agree with the concurring opinion that the calculation of fair market value depends, in part, upon "both parties having reasonable knowledge of the relevant facts." In re Dissolution of Midnight Star Enters., L.P. ex rel. Midnight Star Enters., Ltd., 724 N.W.2d 334, 338 (S.D. 2006). Which facts are "relevant" in this case, however, remains to be determined. As we noted, the County has not yet established Frithiof committed fraud or which facts he had a duty to disclose to the County. In addition, genuine factual issues remain as to whether Frithiof knew the fossils were on the County's land when the lease was entered. Therefore, the County's motion for summary judgment must fail irrespective of what facts are ultimately determined to be "relevant" to the calculation of the fair market value.

full value of Tinker, whatever such value might be. The fair market value of the lease is not the same as Tinker's value. Further, as explained above, the estimated value of Tinker is based on events which occurred subsequent to the lease's execution, and cannot be relied upon to prove the fair market value of the lease at the time it was entered.

### C. The $200,000 Counterclaim

The district court also relied upon the alleged value of Frithiof's counterclaim to conclude the value of the lease exceeded $500 a year. The district court never explained how the value of the counterclaim related to the fair market value of the lease at the time it was entered. Frithiof's counterclaim is for the amount he and his partners spent in finding, excavating, preparing, and marketing the fossils. Equating those costs to the value of the lease is like equating the cost of an oil lease with all the costs associated with finding the oil, capturing it, refining it, and the marketing costs attributable to placing the same in the stream of commerce. The two simply cannot be equated. The County offered no evidence to establish a relationship between the value of a fossil-collecting lease, and the costs associated with excavating, preparing, and marketing fossils pursuant to such a lease.

Although the record in this case is bereft of any direct evidence of the fair market value of the lease at the time it was entered, the sparse evidence which does exist supports an inference the lease's annual value was less than $500. Frithiof refers to deposition testimony indicating the County customarily failed to hold public hearings when entering into fossil-collecting leases. For example, the Harding County Auditor testified a public hearing was not held on the Triebold lease, which contains the identical contingency-based payment provisions as Frithiof's lease, explaining no public hearing was held because the lease did not have an annual value in excess of $500. Appellant's App. 403. Although it could be argued the County's past practice of not holding a public hearing on contingency-based fossil-collecting leases equally supports an inference the County was in the habit of violating the requirements of §

-11-

7-18-32, the district court was required to accept the adverse inference for purposes of summary judgment.

Frithiof also refers to South Dakota Codified Law § 5-1-16, entitled "Promulgation of rules governing issue of paleontological excavation."  Under subdivision 7, the fees for the right to collect fossils on the state's "school and public lands" are "not to exceed twenty-five dollars for an exploration permit and two hundred fifty dollars for an excavation permit."  Again, while not direct evidence of the annual value of a fossil-collecting lease on the particular 200 acres owned by the County and at issue here, the minimal value the state generally placed on fossil-collecting leases supports an inference (albeit a weak one) the lease involved here had an annual value of less than $500.

Finally, the annual value of the grazing lease between the County and Gilbert Cattle Company with respect to the same 200 acres covered by Frithiof's lease was $283.92.  Appellee's App. 303.  Although there is no direct evidence of the relationship in value between grazing leases and fossil-collecting leases, the record here indicates the County habitually held public hearings when entering grazing leases.  Appellant's App. 402-03.  Such fact, in conjunction with the County's failure to hold public hearings for fossil-collecting leases, suggests a fossil-collecting lease may have less value than a grazing lease.[7]

---

[7]We recognize the inherent flaws in making an apples-to-apples comparison between a grazing lease and a fossil-collecting lease.  For example, a paleontologist may know she is twice as likely to find a valuable dinosaur fossil on a particular tract of 100 acres than she is to find one on a different tract of 1000 acres, making a lease on the smaller tract twice as valuable as a lease on the larger, while there is likely to be a more direct relation between value and size with respect to a grazing lease.  We call attention to the inference raised by comparing the County's past practices regarding public hearings more to emphasize the dearth of evidence in this record of any kind with respect to the fair market value of the lease than to emphasize the inference.

III

The County urges us to affirm the district court on an alternative ground, contending the lease should be treated as a contract for the sale of public property because it grants Frithiof title to any fossils he may find. The County contends the agreement is therefore void because the County did not follow the statutory requirements for the sale of public property under South Dakota Codify Laws ch. 6-13. We disagree.

Chapter 6-13 applies to surplus governmental property. South Dakota Codified Laws § 6-13-1 indicates surplus property is that determined to be "no longer necessary, useful, or suitable for the purpose for which it was acquired." Dinosaur fossils do not meet the statutory definition of surplus property, since they were neither acquired initially for a particular purpose, nor did they become no longer necessary, useful, or suitable. Thus, chapter 6-13 does not apply.

As Frithiof contends, there is a distinction between a county's private property and property held for public use. Huron Waterworks Co. v. City of Huron, 62 N.W. 975, 981 (S.D. 1895). A governmental entity's authority to sell and dispose of interests in property not held for public use is broader than it is for property held for public use. Compare S.D. Codified Law § 7-18-31 (generally authorizing the lease of county-owned property) with S.D. Codified Law ch.7-30 (imposing limits on the lease of county real estate held for public purposes). Fossils serve no governmental or public purpose, and thus should be considered a county's private property. Here, the transfer of ownership to dinosaur fossils was incidental to a lease whose stated purpose was for the survey and collection of fossils. We see little difference between the transfer of ownership under a fossil-collecting lease and the transfer which occurs under an oil or grazing lease, where the extraction of oil or grass from the leased land is incidental to the lease, and not considered the sale of surplus property which must be auctioned or bid upon. The County has not called our attention to any provision

-13-

in the South Dakota law which would require it to treat dinosaur fossils differently than other county property transferred incident to a lease.

## IV

In sum, in order to show a public hearing should have been held pursuant to § 7-18-32, it was incumbent upon the County to present evidence of the fair market value of the lease at the time it was entered, without relying upon events which occurred subsequently. Neither could the County rely upon an evaluation which included information it alleges Frithiof fraudulently concealed from it, before the County has proven he committed any fraud. The County failed to present evidence of the fair market value of the lease at the time it was entered, and thus the district court erred in granting the County's motion for partial summary judgment.

Having concluded summary judgment was improperly granted, we need not address Frithiof's alternative argument regarding the County's failure to hold a public hearing merely being an irregular exercise of power which did not require the lease to be voided. Furthermore, because the final judgment in favor of the County must be vacated, we need not address his contention the judgment should not have been entered without the merits of the counterclaim being addressed.

We vacate the final judgment entered in the County's favor, and remand this case to the district court for further proceedings consistent with this opinion.

COLLOTON, Circuit Judge, concurring in the judgment.

Under South Dakota law, "a county may lease its county-owned property," and "any such lease shall be for a term and upon the conditions provided by resolution of the governing body." S.D.C.L. § 7-18-31. If a county "decides" to lease any county-owned property for a term exceeding one hundred twenty days and for "an amount exceeding five hundred dollars annual value," then it shall conduct a public hearing

-14-

before authorizing the lease. S.D.C.L. § 7-18-32. The public hearing statute is easily applied to a lease that calls for a fixed amount of consideration. If a twelve-month lease calls for payment of $1000 per year, then the county shall hold a public hearing before authorizing the lease. This case, however, involves a contingent lease, where the amount to be paid depends entirely on the occurrence of a future event that is indeterminate when the lease is authorized. The principal questions presented on appeal are how the statute should apply to this situation, and whether a failure to conduct a public hearing, if required, voids the lease.

The text of the statute is unclear in its application to a contingent lease, but I am doubtful about the majority's decision to make the requirement of a hearing dependent on the "fair market value" of county-owned property. The proposed interpretation raises complicated evidentiary problems for the citizenry, and it can lead to unreasonable results for a county seeking to comply with the statute. "Fair market value" typically means "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell *and both having reasonable knowledge of relevant facts*." *United States v. Cartwright*, 411 U.S. 546, 551 (1973) (quoting Treas. Reg. § 20.2031-2(b)) (emphasis added). In this very case, it is alleged that Ron Frithiof had knowledge of relevant facts and had a duty to disclose these facts to the county, but that he withheld them until after the lease was authorized. If this allegation is proved, then the majority's interpretation of § 7-18-32 would result in a finding that the county violated the public hearing statute because the "fair market value" of the lease exceeded $500 per annum at the time it was entered – even though the county had no knowledge of this value. I hesitate to ascribe this intention to the legislature.

There is a reasonable argument, given the ambiguous text and the evident statutory purposes, that a county should be required to conduct a public hearing whenever it decides to enter into a lease that calls for payment of an amount exceeding $500 per year, if certain future contingencies are met. *Cf. ante* at 9. In that case, the decision to accept consideration in excess of $500 has been made, and there is no

-15-

further opportunity for public hearing or comment before that decision is executed. Ultimately, however, I conclude that it is unnecessary to decide whether the public hearing requirement technically applied in these circumstances. Under South Dakota law, even assuming the county did err by entering into the lease without a public hearing under § 7-18-32, that failure does not automatically void a lease that is authorized by the governing body.

South Dakota recognizes a "broad distinction between an irregular exercise of a granted power and a total absence of power." *Mellette County v. Arnold*, 75 N.W.2d 641, 643 (S.D. 1956). When a county has "power to act, it may be estopped by the acts of its agents although the method of exercising the power was irregular." *Id.*; *Mo. River Tel. Co. v. City of Mitchell*, 116 N.W. 67, 70 (S.D. 1908). The distinction between an irregular exercise of power and a total absence of power in this context raises essentially a question of legislative intention: "Are the conditions made prerequisite to the very existence of the power – a limitation on the power itself?" *Summers Cottage Ass'n v. Cape May*, 117 A.2d 585, 591 (N.J. 1955).

Although this question, like the meaning of § 7-18-32, is not free from doubt, the better view appears to be that the authorization of a lease without an advance public hearing amounts to an irregular exercise of a power granted to counties in South Dakota. There is no question that counties have authority to lease county-owned property. S.D.C.L. § 7-8-31. The procedural requirement of a public hearing for certain leases is codified separately, and the legislature has not seen fit to provide – as it has in other situations – that an irregularity in procedure renders a lease null and void. *Cf.* S.D.C.L. § 5-18-19 ("It shall be unlawful for any public corporation or its officers to enter into any contract in violation of the terms of this chapter or chapter 5-21, and any such contract entered into shall be null and void and of no force and effect."); *Bozied v. City of Brookings*, 638 N.W.2d 264, 269-70 (S.D. 2001) (holding that change order was void where city failed to comply with public bidding requirements of § 5-18-19). Therefore, assuming § 7-18-32 applied to this lease, I believe the county's entry into the disputed lease was not undertaken with a "total

-16-

absence of power," *Mellette County*, 75 N.W.2d at 643, and that the county "may be estopped to deny the validity of a [lease] that it has led others to believe was legally adopted." *Mo. River Tel. Co.*, 116 N.W. at 70.

For these reasons, I concur in the judgment and agree that the case should be remanded for further proceedings on the county's other claims against the appellants.

_____