RAPID SEWING CENTER, INC., Appellant and Respondent

v.

SANDERS, Appellant and Respondent

(112 N.W.2d 233)

(File Nos. 9881, 9907. Opinion filed December 12, 1961)

Rehearing denied April 30, 1962.

374

**Potter & Crabb,** Rapid City, for Ray Sanders.

**William M. Rensch,** Rapid City, for Rapid Sewing Center, Inc.

ROBERTS, J. This is an action for the conversion of six sewing machines and two vacuum cleaners. Plaintiff alleges in its complaint that the acts of the defendant were willful, malicious and in wanton disregard of its rights. In addition to the value of the property, the plaintiff demanded exemplary damages in the sum of $5,000. The jury returned a verdict against the defendant for $992.50 actual damages and $2500 punitive damages.

The answer contains a general denial and also a specific denial that defendant refused to return the items set forth in the complaint. It is further alleged that the items listed were left on the premises of the defendant by Robert Milligan who occupied the same as a lessee.

The evidence discloses that plaintiff was engaged in the business of retailing sewing machines and vacuum cleaners in Rapid City. Robert Milligan was employed

by the plaintiff as a salesman and was supplied with the items in question by plaintiff. Defendant had leased to Milligan an apartment. The leased property was abandoned by the latter leaving therein sewing machines and vacuum cleaners.

Relating to the circumstances of the refusal of defendant to deliver the property, we quote from the testimony of Mary L. Spears:

"Q. * * * did you sometime during the day, January 5th, 1960, receive a phone call from a person who identified himself as Ray Sanders?

A. Yes, I did. * * *

"Q. Would you give us your best estimate of the exact time? A. Just a little bit before twelve. * * *.

"Q. You may go ahead. Start again if you wish. A. Well, I answered the phone and this fellow said, 'This is Ray Sanders. Do you have a Bob Milligan working for you?' And I said, 'No, I don't think so.' And he said, 'Well, he must work for you', he said; 'he told me he did, and I have your machines.' And I said, 'Well, just a minute', I said, 'maybe that's one of the new fellows, I have been gone for awhile.' So I proceeded to get the checkout board, and I said, 'Oh, yes, we do have,' and I says, 'I will send someone after the machines.' He told me they were in the apartment that Milligan had left there, and he said, 'No never mind,' he said, 'I'll take care of that. I want my rent.' He asked me if Milligan had any money coming, and I said I didn't know whether he did or not. So then I don't even remember what he said. Then I said, 'I will have to talk to the manager, I am just an office girl * * *.' "

Witness also testified as to a second telephone conversation with defendant about thirty or forty minutes

later wherein he inquired for the manager who was not then in the office.

Defendant testified as to the telephone conversations with Mrs. Spears as follows:

> "Q. What did she say? A. She said, 'Why can't we pick them—or when can we pick them up?'

> "Q. What did you say? A. After I get a release from Mr. Milligan or some paper to show that somebody else owns them, or a finance paper * * * (showing) a right to repossess."

The attorney for the plaintiff called defendant by telephone about one o'clock with regard to the sewing machines and vacuum cleaners. There was evidence of ill feeling between him and defendant arising from transactions that did not involve plaintiff company. Defendant testified that in the telephone conversation he was informed that by his actions "he had bought himself" the sewing machines and vacuum cleaners and that "papers" had already been prepared to serve upon him. The use of abusive and provocative language by both parties is uncontroverted.

Howard Newsom, manager and part owner of plaintiff company, was present in the office of the attorney representing the plaintiff at the time of the telephone conversation referred to. He had been a resident of Bismarck, North Dakota, had recently become manager of the plaintiff company and was not acquainted with the defendant. After the telephone conversation Mr. Newsom went to the home of the defendant and demanded possession of the property in question. An altercation followed in which according to the testimony of Mr. Newsom defendant cursed and threatened him. This witness testified:

> "I told him, I said that I didn't have anything to do with the hiring of the attorney, * * * I had nothing to do with it, that I had been in Rapid City since Monday, that I had come from Bismarck down here, * * * when I told Mr. Sanders that I

came up to see him in regard to my sewing machines and vacuum cleaners that he had, and I wanted them, he began to get up and move around the room, and again he told me that I should have hired a decent attorney that maybe this could have been settled in a gentleman way. * * * I said, 'All right, we will let the attorneys fight it out,' * * *."

Process in this action was served upon defendant immediately after the departure of Mr. Newsom. The action was not for possession of the property, but for money judgment.

■ In order to constitute a conversion of chattels there must be some repudiation of the owner's right or some exercise of dominion over them inconsistent with such right or some act done which has the effect of destroying or changing the character of the chattel. Richstein v. Roesch, 71 S.D. 451, 25 N.W.2d 558, 169 A.L.R. 98. It is thus said in Coleman v. Francis, 102 Conn. 612, 129 A. 718, 719, that conversion may be grouped into two general classes: "(1) Those where the possession is originally wrongful; and (2) those where it is rightful. * * * The second class, [is] where the possession originally rightful becomes wrongful by reason thereafter of a wrongful detention, or a wrongful use of the property, or the exercise of an unauthorized dominion over the property."

■■ It is ordinarily the duty of a person who has the chattels of another to deliver them to the owner on demand and if he refuses to comply, he becomes liable for conversion. The person on whom demand is made, however, may have a reasonable time after demand for investigation to determine who has the right to possession. 89 C.J.S. Trover and Conversion § 60; Annotations in 61 A.L.R. 621 and 129 A.L.R. 638. Where the qualified or conditional refusal is not reasonable and amounts to a denial of the rights of the owner in the chattels, an action for conversion will be sustained. Maxwell Hardware Company v. Hoffman, 41 S.D. 212, 170 N.W. 135.

■ Defendant contends that the trial court erred in instructing the jury as follows: "You are instructed that under the evidence in this case the plaintiff was the owner and entitled to the possession of the vacuum cleaners and sewing machines. You are instructed that if the defendant absolutely or unqualifiedly refused to deliver possession of the vacuum cleaners and sewing machines to the plaintiff upon demand of the plaintiff for possession of said property, then you will find for the plaintiff". This is but a part of the court's instructions. The instructions given in a case should be considered as a whole. The court also instructed the jury to the effect that the detention of the property would not constitute conversion if defendant having a reasonable doubt as to plaintiff's right of possession did not unqualifiedly refuse to hand over the property, but requested a reasonable opportunity to investigate its right to possession.

■ ■ The possession by defendants of the sewing machines and vacuum cleaners was originally rightful. Plaintiff was required to show that there had been a demand for the possession of the property. Whether defendant unqualifiedly disputed plaintiff's right of title or possession or retained possession merely for the purpose of enabling him to determine who was entitled to possession was a disputed question of fact. When considered as an abstract proposition of law, the excerpt in the instruction to which defendant objected might be subject to criticism. The instructions considered as a whole correctly state the law upon the issue of right of detention and the jury was not misled to the prejudice of the defendant.

Defendant contends that exemplary damages are not recoverable merely because of the wrongful detention of the property after demand. SDC 1960 Supp. 37.1901 provides that the measure of damage for a breach of an obligation not arising from contract is "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." The next section, 37.1902, provides that for the breach of such an

obligation "where the defendant has been guilty of oppression, fraud, or malice, actual or presumed," the jury may award exemplary damages. To sustain a recovery of exemplary damages it must thus appear that the taking or detention of the personalty of another was accompanied by oppressive, fraudulent or malicious conduct. See Annotation in 54 A.L.R.2d 1361 as to exemplary damages for conversion of personalty.

In Baxter v. Campbell, 17 S.D. 475, 97 N.W. 386, 387, this court said:

"As applied to torts, an act, in order to be malicious, must be wrongful, and intentionally done, with an evil mind, and a wish to injure another. Bouvier's Law Dict.; Pickett and Wife v. Creek [Crook], 20 Wis. 358. * * * our statute provides for .. exemplary damages only as a means of punishment 'when the defendant has been guilty of oppression, fraud or malice, actual or presumed.' Rev. Civ. Code, § 2292. Malice is defined to be a 'wicked intention to do an injury.' 'In trespass, when the injury has been wanton or gross and outrageous. Not merely the doing of an unlawful or injurious act, but an act conceived in a spirit of mischief or of criminal indifference to civil obligation.' "

See also Gamble v. Keyes, 39 S.D. 592, 166 N.W. 134; Id. 43 S.D. 245, 178 N.W. 870; Baumgartner's Electric Const. Co. v. De Vries, 77 S.D. 273, 91 N.W.2d 663.

In Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S.Ct. 151, 153, 79 L.Ed. 393, Mr. Justice Cardozo speaking for the court said:

"The respondent contends that the petitioner was liable for a willful and malicious injury to the property of another as the result of the sale and conversion of the car in his possession. There is no doubt that an act of conversion, if willful and malicious, is an injury to property within the scope of this exception. Such a case was McIntyre

v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205, where the wrong was unexcused and wanton. But a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. * * * There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one."

In Fetterly v. Salyer, 96 Cal.App.2d 240, 215 P.2d 64, the court sustained a contention that there was no evidence justifying an award of exemplary damages. Defendants had gone upon the land of the plaintiff, harvested barley and had converted such grain to their own use. The court stated while there was some evidence of ill feeling this evidence related to a later period and there was no such evidence with respect to the time when the controversy arose or prior thereto.

■ ■ The record does not indicate that when the controversy arose the defendant was guilty of fraud or was prompted by a spirit of malice toward the plaintiff. After discovering the fact that property of the plaintiff had been left in the apartment he as might be expected made inquiries by telephone concerning the property and the whereabouts of Mr. Milligan and the status of his employment. He claims that he intended to hold the property for a reasonable time to determine the right to possession, but as we have observed the implied finding of the jury is to the contrary. The fact that defendant committed a wrongful act in retaining the property does not in itself justify the imposition of exemplary damages. The question is whether the conversion was accompanied by a willful and wanton disregard of the rights of the plaintiff. The abusive and insulting language on the part of the defend-

ant unquestionably was prompted by prior dealings between him and the attorney that did not involve or concern plaintiff company. There is as stated no evidence to show oppression, fraud or malice as a basis for exemplary damages.

The judgment is modified by reducing it in the sum of $2500, which is the amount awarded as exemplary damages, and as so modified the judgment is affirmed. No costs will be taxed.

All the Judges concur.