_____

No. 96-1042
_____

Carmen Heppler; K.D. Heppler,     *
     *
    Plaintiffs - Appellants,    *
     *
    v.     *  Appeal from the United States
     *  District Court for the
Thomson Newspapers, Inc.;    *  District of South Dakota.
Thomson Newspapers Holdings,    *
Inc.,     *
     *
    Defendants - Appellees,    *

_____

Submitted:  November 19, 1996

Filed:  January 29, 1997
_____

Before BEAM, FRIEDMAN,* and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

Carmen Heppler, a Shopko Stores employee, was injured when she fell into a hole in the floor of warehouse space Shopko leased from Thomson Newspapers, Inc. Heppler sued Thomson and its successor for negligence. The district court[1] granted summary judgment in Thomson's favor, concluding that it did not control the leased premises and therefore did not breach a duty to Shopko or Heppler. Heppler appeals. Reviewing the grant of summary judgment de novo, we affirm.

_____

*The HONORABLE DANIEL M. FRIEDMAN, United States Circuit Judge for the Federal Circuit, sitting by designation.

[1]The HONORABLE JOHN B. JONES, United States District Judge for the District of South Dakota.

## I.

In March 1987, Shopko leased from Thomson the second and third floors of an old three-story building in Mitchell, South Dakota. Shopko used the leased premises to store goods for a nearby store. A newspaper owned by Thomson occupied the first floor and one storage room on the second floor. Before Shopko took possession, representatives of Shopko and Thomson toured the leased premises. They noticed a twenty-eight inch square hole in the third floor, created when a ventilation fan for the second floor was removed in the late 1960s. The hole was covered by a plywood board mounted on a metal bar that allowed the board to swivel. A Shopko employee who took this tour testified that he recalled a discussion of the hole but could not recall what was said. The summary judgment record contains no testimony by the former employee who took this tour on behalf of Thomson.

After the lease began, Shopko usually placed pallets of stored products or empty pallets over the hole, eliminating the risk that an employee would fall through the hole. At one time, a Shopko employee noticed that the plywood cover sagged under the weight of pallets and placed a second board over the hole to reinforce its cover. Many Shopko employees were aware of the hole, including the general manager and the employee responsible for work safety. Thomson did nothing about the hole before or after Shopko took possession. Shopko did not complain to Thomson or request that the hole be repaired during the five years prior to Heppler's fall.

On December 9, 1992, Heppler and her supervisor came to the third floor to load supplies. Neither knew of the hole in the floor. The supervisor asked Heppler to move the boards covering the hole because they were in his way. Heppler picked up the boards, was surprised to discover the large hole, and fell into it. She caught herself before falling sixteen feet to the floor below but was seriously injured in the process. This lawsuit followed.

The district court granted summary judgment for Thomson because it did not control the leased premises and had no contractual duty to remedy this known, potentially dangerous condition.

## II.

South Dakota law governs this diversity case. South Dakota follows the general rule that "a landlord, having parted with full possession of the premises to the tenant is not liable for injury to third persons caused by the tenant's negligence." Clauson v. Kempffer, 477 N.W.2d 257, 259 (S.D. 1991). In the case of a partially leased building, the landlord must exercise reasonable care to discover and remedy dangerous conditions in common areas that remain under the landlord's control, such as the stairways and freight elevator in the building in question, but has a lesser duty as to areas under the tenant's control. See Boe v. Healey, 168 N.W.2d 710, 712-13 (S.D. 1969); John Moodie Dry Goods Co. v. Gilruth, 153 N.W. 383, 384 (S.D. 1915).

Clauson concerned a dangerous condition created by the tenant after the lease commenced. The Supreme Court of South Dakota cited approvingly § 355 of the Restatement (Second) of Torts, which provides that a landlord generally is not liable for a "dangerous condition which comes into existence after the lessee has taken possession." The court in Clauson went on to discuss favorably exceptions to § 355's general rule found in §§ 357, 358, 361, and 362 of that Restatement. In this case, Heppler was injured by a dangerous condition existing when the Shopko lease began. The general rule for that kind of hazard is found in § 356 of the Restatement:

> Except as stated in §§ 357-362, a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession.

The parties assume, and we agree, that the Supreme Court of South Dakota would follow § 356, appearing as it does in the midst of a series of Restatement principles discussed favorably in <u>Clauson</u>. Thus, to avoid summary judgment, Heppler must come forward with evidence that creates a jury issue on whether her claim falls within an exception to the general rule in § 356.

**A.** Heppler first argues that her claim comes within the exception in § 357 of the Restatement because Thomson "contracted by a covenant in the lease or otherwise to keep the land in repair" and negligently failed to remedy "a condition of disrepair existing before" Shopko took possession. The critical question on this appeal is whether Thomson contracted to repair the leased premises. Heppler finds such a covenant in Paragraph 3 of the lease:

> Prior to said Lessee occupancy, Lessor shall prepare the premises in a broom-clean condition, and in case of an existing building, Lessor shall repair all locks, doors, windows, lights, electrical and mechanical systems and repair and replace all other defects in the demised premises and its appurtenances. Lessor shall repair latent defects in the premises or its appurtenances.

As the district court recognized, the problem with Heppler's contention is that Paragraph 3 is a covenant to repair defects "prior to [Shopko's] occupancy," not a covenant to keep the premises in repair during the lease term. It is undisputed that the leased premises were closed to the public, and Thomson could not enter without Shopko's permission. Paragraph 22 provided that, at the end of the lease, Shopko must surrender the premises "broom-clean, in good order and repair." Thomson's maintenance man testified, without contradiction, that Shopko was responsible for cleaning and maintenance of the leased premises.

There is simply no evidence that Thomson contracted to keep the leased premises in repair during the lease term. Heppler notes that Thomson repaired a collapsed ceiling during the lease term and

points to Paragraph 17 of the lease, which gave Thomson the right to enter the premises "to make such repairs or alterations therein as may be necessary for the safety and preservation thereof, without unduly disturbing the operations of the Lessee." However, comment b to Restatement § 357 states that this exception to the general rule "has no application where the lessor does not contract to repair, but merely reserves the privilege to enter and make repairs if he sees fit to do so." See Henze v. Texaco, Inc., 508 A.2d 1200, 1202-03 (Pa. Super. Ct. 1986).

There is also no probative evidence that Thompson breached a specific pre-occupancy covenant to repair the hole. The hole was not a latent defect because Shopko knew of it no later than its pre-occupancy tour of the premises. The hole was not the sort of condition covered by the general pre-occupancy covenant to "repair and replace all other defects," because the proper remedy for this kind of condition turns on the lessee's intended use of the property. For example, if Shopko planned to cover the hole with permanent shelving, no remedy would be needed. On the other hand, if Shopko intended to cover the hole at all times with moveable plywood and pallets, instructions and warnings to warehouse employees -- a remedy most effectively implemented by Shopko -- would render the condition reasonably safe in a non-public warehouse environment. In these circumstances, the lack of a specific contractual undertaking by Thomson, either in the written contract or during the pre-occupancy tour, supported by the lack of evidence that Shopko ever complained of Thomson's failure to repair the hole, make summary judgment appropriate on Heppler's claim that Thomson negligently breached a contractual duty to repair.

**B.** Alternatively, Heppler argues that her claim falls under another exception to § 356, namely, that a landlord is liable if its negligent repairs have "made the land more dangerous for use or given it a deceptive appearance of safety." Restatement § 362. Prior to Heppler's injury, in repairing the building's exterior

walls, Thomson covered the third floor windows.  Heppler argues that this diminished the third floor lighting, making the hole a more dangerous condition for third floor users.  However, the exception in § 362 applies only if the lessee "neither knows nor should know" that the leased premises have been made more dangerous for use.  Here, Shopko was aware of the reduced lighting, provided temporary lighting and flashlights for employees using the third floor, and had discussed upgrading the lighting with Thomson prior to the accident.  The exception in § 362 does not apply.  See Parrish v. Witt, 555 P.2d 741, 743 (Mont. 1976).

To summarize, because the hole in the floor was not a latent defect; because Thomson did not control the leased premises and neither specifically agreed to remedy the hole, nor generally agreed to keep the leased premises in good repair; and because Shopko was aware of and took action to remedy the reduced third floor lighting, we conclude that Heppler's accident must be attributed to tenant negligence as a matter of South Dakota law.  Therefore, the district court's grant of summary judgment in favor of Thomson is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.