1999 SD 151

**Connie DREW, Plaintiff and Appellant,**

v.

**Tom STANTON and Mary Stanton, Defendants,**

and

**Costello, Porter, Hill, Heisterkamp & Bushnell, Defendant and Appellee.**

No. 20771.

Supreme Court of South Dakota.

Argued Sept. 16, 1999.

Decided Dec. 8, 1999.

Rick Johnson, Johnson, Eklund, Nicholson, Peterson, & Fox, Gregory, for plaintiff.

Gary Pashby and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and appellee Costello, Porter, Hill, Heisterkamp & Bushnell.

DOBBERPUHL, Circuit Judge.

[¶ 1.] Connie Drew (Drew) brought suit against her attorney Thomas Stanton, his wife, Mary and the Costello, Porter, Hill, Heisterkamp & Bushnell law firm (Costello) in 1996. Summary judgment was entered against Stanton and his wife on August 18, 1997 for over $900,000 plus interest and costs. Costello also moved for summary judgment on Counts I and II of Drew's complaint. Count I is a claim against the Stantons and an agency claim against Costello. Count II is a claim against Costello for negligent supervision and retention of Stanton. On October 13, 1998 the circuit court granted summary judgment in favor of Costello on Counts I and II. Drew appeals and we affirm.

### FACTS AND PROCEDURE

[¶ 2.] Stanton, a lawyer at Costello, was acting as Drew's attorney in litigation involving her family's business, Black Hills Jewelry Manufacturing Company. The facts of that case can be found in *Landstrom v. Shaver*, 1997 SD 25, 561 N.W.2d 1. During the course of that representation, on June 19, 1991, Drew and Stanton met for lunch at Drew's country club. During lunch, Stanton asked Drew if she would be interested in investing in a casino in Colorado. Drew refused that offer, but agreed to extend Stanton a loan that would allow him to invest.

[¶ 3.] Following the country club lunch, Drew discussed a $125,000 loan to Stanton with her accountant and financial advisor, both of whom advised her it was risky. They further advised her to charge a high interest rate if she made the loan. On June 26, 1991, Drew made the $125,000 loan to Stanton and his wife, Mary. Knowing the loan was risky, Drew charged Stanton a high interest rate (17%) as she had been advised, but failed to secure the loan.

[¶ 4.] Prior to making the loan, Drew and Stanton discussed the fact that the loan was being made to Stanton individually and not as her attorney. Drew signed an acknowledgment indicating Stanton was not acting as her attorney and that Costello had nothing to do with the transaction.[1] Following this first transaction, Drew made three additional loans to Stanton for the casino investment, all high interest and unsecured.[2] The total amount of money Drew loaned Stanton was $500,000. Every loan transaction occurred at Drew's office and the checks were issued either to Mary or Tom Stanton.

[¶ 5.] In 1995, Drew asked for repayment of the loans. It was at this point that Stanton indicated he did not have the means to repay because the casino had gone bankrupt. At that time, Drew decided to disclose the loan transactions to Bill May, one of Stanton's partners at Costello, in order to discuss Stanton's inability to repay. None of the attorneys at Costello were aware of the business dealings between Drew and Stanton until that time. Once Bill May was advised of the situation, he told the other partners at Costello about the transactions between Drew and Stanton. Costello attorneys May, Heisterkamp, Carpenter, and Hill then met with Drew at her residence on July 19, 1995 and Drew explained the nature of the loan transactions to them. Soon thereafter, a partner's meeting was held at Costello and Stanton was asked to leave the firm.[3] The firm then turned the matter over to the State Bar of South Dakota, concealing Drew's identity at her request.

[¶ 6.] Through her attorney, Drew requested that Costello forward any of Stanton's future compensation directly to her. Costello informed Drew it could not do that without a written authorization from Stanton. Such authorization was never received. Drew also made a partial payment on the bill she owed Costello for legal services rendered in the *Landstrom* litigation, however the bill has not been paid in full. Costello has counterclaimed against Drew for the amount she owes the firm in legal bills. Drew sees this as a "ratification" by Costello of Stanton's actions.

## STANDARD OF REVIEW

[¶ 7.] Our review of a trial court's order granting summary judgment is well established:

1. The acknowledgment Drew signed read:

   The undersigned has agreed to make a substantial uncollateralized loan to Thomas W. Stanton
   She acknowledges that the loan is not made in his capacity as her attorney or one of her attorneys.
   He has refrained from giving business or professional advice in regard thereto. She has had the opportunity and has sought unrelated professional advice regarding this transaction. She further understands that this is a high risk investment and based on that advice is charging interest accordingly. Costello, Porter, Hill, Heisterkamp, and Bushnell Law Firm has had absolutely nothing to do with this transaction and is in no way responsible for it.

2. The other three loans were made on December 9, 1991 for $150,000 at 18% interest; December 20, 1991 for $100,000 at 18% interest; and on January 15, 1993 for $125,000 at 17% interest.

3. The record reflects that Costello did have a policy in place which prohibited its attorneys from engaging in business dealings with clients. The policy also prohibited Costello attorneys from obligating the firm in sums greater than $250 without prior approval and required disclosure of favors received from clients. Stanton was aware of the policy.

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Paint Brush Corp., Parts Brush Division v. Neu,* 1999 SD 120 ¶ 12, 599 N.W.2d 384, 389 (quoting *Coffee Cup Fuel Stops & Convenience Stores, Inc. v. Donnelly et al.,* 1999 SD 46, ¶ 17, 592 N.W.2d 924).

## DECISION

[¶ 8.] **Under principles of agency, is Costello liable to Drew on the loans she made to Stanton?**

[¶ 9.] Under South Dakota law, for agency principles to apply, a plaintiff must prove an employee's acts were "within the scope" of his employer's business. *Deuchar v. Foland Ranch, Inc.,* 410 N.W.2d 177, 180 (S.D.1987); *Leafgreen v. American Family Mut. Ins. Co.,* 393 N.W.2d 275, 280–81 (S.D.1986). "Within the scope" refers to those acts of an employee that are so closely connected with what he was employed to do or so fairly and reasonably incidental to it that they can be regarded as methods of achieving the objectives of the employment. *Deuchar,* 410 N.W.2d at 180. Costello is in the business of practicing law. Stanton's receipt of loans from Drew in violation of Costello's policy was not related to practicing law. Rather, Stanton was acting for his own personal benefit and received a

personal loan from Drew. Referencing South Dakota law, it has been held that "an act of an employee done for the benefit of the employer ... is within the general scope of a servant's employment, but an act done to effect some independent purpose of the employee's is not within that scope," and the employer may not be held liable. *Wollman v. Gross,* 484 F.Supp. 598, 601, 602 (D.S.D.1980) (citing *Morman v. Wagner,* 63 S.D. 547, 262 N.W. 78 (S.D. 1935)).

[¶ 10.] Drew asserts Costello should be liable under principles of agency because she felt she had no choice but to loan Stanton the money since he was her attorney. However, "[t]he mere fact that an employee's employment situation may offer an opportunity for tortious activity does not make the employer liable to the victim of that activity." *Bozarth v. Harper Creek Bd. of Ed.,* 94 Mich.App. 351, 288 N.W.2d 424, 426 (1979). This is the case here. Drew is claiming she lent money to Stanton because she trusted him as her attorney even though she knew it was a high risk venture. In essence, she asserts that because Stanton was her attorney and he used that position to secure loans from her the law firm should be liable for the loans. However, *Bozarth* holds this is not necessarily true.

[¶ 11.] Stanton's acts simply were not sufficiently connected with Costello's business to impose liability on the firm. Under similar facts in *Rouse v. Pollard,* 130 N.J. Eq. 204, 21 A.2d 801, 803 (1941) the Supreme Court of New Jersey dismissed a client's claim against a law firm based on a partner's receipt of a loan from the client where no part of the money ever came to the firm and firm members were not aware of the transaction. Likewise in *Douglas Reservoirs Water U. Ass'n. v. Maurer & Garst,* 398 P.2d 74, 77 (Wy. 1965) the Supreme Court of Wyoming concluded "acceptance of the money for investment purposes by a member of a law firm [i]s not within the scope or apparent

scope of the firm's business" and the firm is not to be held liable for repayment. We reach a like conclusion here.

**[¶ 12.] Did Costello ratify Stanton's actions?**

[¶ 13.] Drew also asserts Costello "ratified" Stanton's conduct by retaining the benefits from her loans to Stanton and, therefore, Costello is liable on the loans. She contends ratification occurred when Costello accepted money from her for Stanton's legal services. While it is true that a principal's acceptance of the benefits of a contract with full knowledge of all the material facts may imply ratification, a principal cannot ratify an agent's contract *unless the agent purported to act for the principal at the time of contracting.* *Bates Co. Nat'l Bank v. Wilson,* 767 S.W.2d 101, 104 (Mo.App.1989). Here Drew signed an acknowledgment stating Stanton was not acting as her attorney in accepting the loans and that Costello was in no way involved in the transactions. Moreover, there is no evidence the other partners in Costello knew of the circumstances of any of the loans. Therefore, the partners could not have ratified the agreements. *See, id.*

[¶ 14.] Costello did continue to bill Drew for services rendered after the firm learned of the loans to Stanton and these fees are what Drew now contends are the "retained benefits." However, Drew ignores that the firm also dismissed Stanton and reported the situation to the state bar after finding out about the improper loans. The affirmance required to establish ratification may either be express or implied from conduct showing an election to treat an unauthorized act as authorized or by conduct which can be explained only if there was such an election. *Bank of Hoven v. Rausch,* 382 N.W.2d 39, 41 (S.D. 1986) (citations omitted). Reporting Stanton's actions to the state bar is not "conduct showing an election to treat an unauthorized act as authorized." Rather it clearly shows Costello was *not* treating Stanton's actions as authorized. Costello did what it could to make it clear to everyone involved that Stanton's conduct was improper and that the firm did not condone the actions he had taken.

[¶ 15.] Ratification requires knowledge of the material facts plus intent to ratify. *Id.* Here taking the actions it did after learning of the loan transactions between Drew and Stanton, it can be said that Costello did everything *but* ratify Stanton's actions. The collection of legal fees is not "retaining the benefits" of the agreement between Drew and Stanton. The fees had nothing to do with the loans, and everything to do with services rendered by Stanton. At no time did any of the loan money go to the firm.

## CONCLUSION

[¶ 16.] Stanton and Drew kept their loan transactions secret and Costello did not benefit from or encourage these transactions in any way. This Court cannot hold Costello liable for something Stanton did outside his capacity as an attorney or partner in the firm. This is especially true when we consider that Drew is an accomplished businesswoman who has made many personal loans to people over the years. Moreover, the firm did not even know Stanton was accepting loans from Drew. Costello did not give him authority to do business with clients nor did it ratify his actions when they finally came to light. Accordingly, the summary judgment for Costello is affirmed.

[¶ 17.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 18.] DOBBERPUHL, Circuit Judge, for KONENKAMP, Justice, disqualified.