# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-1540

———————

Harding County, South Dakota, et al.,    *
                                    *

       Plaintiffs - Appellants,        *

                                      *   Appeal from the United States

       v.                               *   District Court for the
                                      *   District of South Dakota.

Ron Frithiof, et al.,               *

                                      *

       Defendants - Appellees.     *

———————

Submitted: February 12, 2009
Filed: August 6, 2009

———————

Before LOKEN, Chief Judge, MELLOY and BENTON, Circuit Judges.

———————

LOKEN, Chief Judge.

Harding County, South Dakota, is home to many valuable fossils. In June 1998, fossil hunter Mark Eatman found fossilized remains of a juvenile tyrannosaurus rex dinosaur on land in Harding County that was either owned by rancher Gary Gilbert or owned by the County and leased to Gilbert for grazing. Eatman sold his interest in the fossil for $50,000 to a Texas group led by Ron Frithiof, who named the fossil "Tinker." Frithiof and Gilbert then entered into a series of prospecting leases. From June 1998 until November 2000, Frithiof and his partners excavated from the site approximately twenty-eight field jackets (soil and fossils removed together and wrapped in plaster casing), and Frithiof began negotiations to sell Tinker to the Indianapolis Children's Museum. His asking price was $8.5 million.

Becoming aware that Tinker may have been found on County-owned land, Frithiof and his group approached Harding County for a lease. On November 9, 2000, Frithiof and the County entered into a five-year lease granting Frithiof legal title to fossils "located and/or collected" on County property in exchange for "ten percent (10%) of the actual selling price of any fossils collected from [County property] and which are sold by [Frithiof] for a sum exceeding [one thousand dollars]." At issue on this appeal was an additional clause entitled "OTHER," which provided that the lease terms would apply to fossils "that Lessee has located, discovered, or removed . . . on the Leased Property, or any other property owned by Harding County, prior to the date of this lease."

When the County later learned that Frithiof found Tinker two years before the lease was signed, it rescinded the lease and commenced this action against Frithiof and three of his partners (we will refer to defendants, collectively, as "Frithiof"). A class of Harding County taxpayers joined as plaintiffs. The district court initially granted summary judgment for the County, concluding that the lease was void because the County failed to hold a public hearing before authorizing the lease, as SDCL § 7-18-32 requires if a lease is "for an amount exceeding five hundred dollars annual value." Frithiof appealed. We vacated the judgment and remanded because the County "failed to present evidence of the fair market value of the lease at the time it was entered, and thus the district court erred in granting the County's motion for partial summary judgment." County of Harding, S.D. v. Frithiof, 483 F.3d 541, 551 (8th Cir. 2007) ("Frithiof I"). On remand, the district court[1] granted summary judgment to Frithiof. The County appeals, raising numerous issues. Reviewing the grant of summary judgment *de novo*, we affirm. Heppler v. Thomson Newspapers, Inc., 105 F.3d 1212, 1213 (8th Cir. 1997) (standard of review).

---

[1]The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota.

Although the County's complaint asserted eight separate claims sounding in contract and tort, and all are argued on appeal, the appeal turns on the answers to three questions: (1) Did Frithiof have a legal duty to disclose his prior discovery of Tinker before the lease was signed? (2) May the County void the lease if it committed a mistake of law that resulted in non-compliance with § 7-18-32? (3) Did Frithiof commit actionable trespass or conversion in removing fossils from County land before the lease was signed? After describing the lease negotiations, we will address the County's arguments on appeal in the context of these questions.

## I. THE LEASE NEGOTIATIONS

Frithiof's attorney, Jimmy Nassour, first contacted Harding County Auditor Kathy Glines in July 2000. The County had signed two fossil excavation leases with other prospectors in 1996. Auditor Glines testified the County knew in advance that both prospective lessees had already found fossils on County land. In July 2000, Nassour proposed a written lease modeled on one of the 1996 leases, containing identical purpose, rent, and title provisions. Nassour added two new provisions, proposing to back-date the lease to 1998 and including an "OTHER" clause providing that "Lessee shall be responsible for negotiating a lease with any other lessee which may have rights to lease the property." In tandem, these additions would have resolved the prior discovery issue while making Frithiof responsible for dealing with any prior lessee during the back-dated period (in other words, Gilbert, with whom Frithiof had already negotiated).

Glines and the County's attorney, Robert Haivala, reviewed Nassour's proposed lease. They rejected the proposed back-dating as not authorized by law and noted errors in the land description. Nassour drafted a revised lease, making the requested changes. He also replaced the prior "OTHER" clause with the above-quoted provision applying the lease's terms to prior discoveries. Nassour mailed the revised lease to Glines, with a cover letter noting the changes to the land's legal description but not

the revised "OTHER" clause.[2]  Glines presented the revised lease to the County's Board of Commissioners while Haivala was out of town.  The Board approved it on November 9 without notice or public hearing pursuant to § 7-18-32.

Neither party disputes that Tinker was found on County land.  Frithiof testified that he sought a lease with the County after Gilbert told him in the summer of 2000 there was County land as well as Gilbert-owned land in the area where Tinker was found.  Frithiof claimed he did not know Tinker was on County land until the area was professionally surveyed in March 2001.  The County's view is more sinister, based on testimony by a Frithiof marketing consultant that Frithiof was "just tickled how clever they were to slip [the prior discovery clause] in that way because [the County] still weren't going to know that it was Tinker they were talking about."  For summary judgment purposes, we of course credit that testimony.  The County rescinded the lease in May 2003 and commenced this lawsuit.

## II.  FRITHIOF'S ALLEGED DUTY TO DISCLOSE

The County's Complaint alleged that Frithiof failed to disclose that he had entered County property to search for fossils and had found, excavated, removed, and attempted to sell Tinker, "despite having a duty to disclose such information" during the lease negotiations.  Based on this failure to disclose, the County asserted tort and contract claims for damages and rescission of the lease based on actual and constructive fraud, mistake of fact and law, breach of fiduciary duty, and breach of the

---

[2]At her deposition, Auditor Glines changed her initial recollection that the County proposed the "prior discovery" clause to ensure that it received proceeds from anything discovered prior to the lease.  Viewing the facts in the light most favorable to the County, we assume that attorney Nassour inserted the provision.  This is logical, as well, because the prior discovery provision gave Frithiof the same protection he would have received from the rejected back-dating proposal, and the replaced "OTHER" provision was inappropriate unless the lease was back-dated.

-4-

covenant of good faith and fair dealing. Though the district court separately discussed each claim, central to its decision was the conclusion that, under South Dakota law, "failure to provide a full disclosure of facts known to one party during contract negotiations" is neither fraudulent nor a breach of a fiduciary or other duty. On appeal, the County's lead argument is that Frithiof had a duty to disclose information "material to the contract." The existence of a duty is a question of law that is "appropriate" for summary judgment decision. Garrett v. Bankwest, Inc., 459 N.W.2d 833, 839 (S.D. 1990).

Breach of Fiduciary or Other Duty. Like the district court, we begin with the question whether Frithiof breached a fiduciary duty to disclose during the lease negotiations that he had previously discovered, removed, and attempted to sell Tinker fossils. Under South Dakota law -

> fiduciary duties are not inherent in normal arm's-length business relationships, and arise only when one undertakes to act primarily for another's benefit. The law will imply such duties only where one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other.

Taggart v. Ford Motor Credit Co., 462 N.W.2d 493, 500 (S.D. 1990). "Fiduciary relationships juxtapose trust and dependence on one side with dominance and influence on the other." High Plains Genetics Research, Inc. v. J.K. Mill-Iron Ranch, 535 N.W.2d 839, 842 (S.D. 1995).

The County argues that a fiduciary duty arose because it placed "trust and confidence" in Frithiof. But this alone does not create a fiduciary relationship:

> One party cannot transform a business relationship into one which is fiduciary in nature merely by placing trust and confidence in the other party. There must be additional circumstances, or a relationship that

induces the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection.

High Plains, 535 N.W.2d at 842 (citation omitted). No "additional circumstances" emerge from the parties' arm's-length dealings in this case, such as the conflict of interest that motivated a bank to lure investors into a certain-to-fail investment in Buxcel v. First Fidelity Bank, 601 N.W.2d 593, 598-99 (S.D. 1999). The County as owner had control of the land, was experienced in fossil leases, and had its auditor and attorney review the proposed lease and insist on changes.

In High Plains, the Supreme Court of South Dakota reversed an award of damages for breach of fiduciary duty, noting that, although one party had "superior knowledge and technical skills" and provided a "specialized service," the other party was not "lacking in mental acuity, business intelligence or knowledge of the basic principles involved." 535 N.W.2d at 842; accord Cleveland v. BDL Enter., Inc., 663 N.W.2d 212, 218 (S.D. 2003). Based on these controlling authorities, we agree with the district court there was no fiduciary relationship or breach of fiduciary duty.[3]

The County further argues that, even if Frithiof had no fiduciary duty to disclose, he breached an obligation to disclose "facts basic to the transaction," a duty recognized in Maybee v. Jacobs Motor Co., 519 N.W.2d 341 (S.D. 1994), and § 551(2)(e) of the Restatement (Second) of Torts (1977). The district court did not discuss this contention.

Restatement § 551(2)(e) requires disclosure of facts basic to the transaction only if the other party, "because of the relationship between them, the customs of the

---

[3]In its Reply Brief, the County argued for the first time that, because Frithiof had possession of the fossil while negotiating, he owed the County fiduciary duties as trustee of an implied trust under SDCL §§ 55-1-8, 55-2-1. We do not consider issues not raised in the district court or in a party's principal brief.

trade or other objective circumstances, would reasonably expect a disclosure of those facts." In <u>Maybee</u>, the Court applied this standard and concluded, not surprisingly, that a professional car dealer had a duty to disclose that the 1984 van being sold contained a rebuilt 1966 engine. On the other hand, in <u>Schwaiger v. Mitchell Radiology Assoc., P.C.</u>, 652 N.W.2d 372, 380-81 (S.D. 2002), the Court concluded that the duty outlined in § 551 did not compel an employer to disclose in arm's-length negotiations with a prospective employee the existence of a voting agreement that affected control of the corporation. In concluding there was no duty to disclose, the Court quoted approvingly Restatement § 551, cmt. k, 652 N.W.2d at 380 n.9:

> superior information and better business acumen are legitimate advantages, which lead to no liability. The defendant may reasonably expect the plaintiff to make his own investigation, draw his own conclusions and protect himself; and if the plaintiff is indolent, inexperienced or ignorant, or his judgment is bad, or he does not have access to adequate information, the defendant is under no obligation to make good his deficiencies.

We conclude that <u>Schwaiger</u> is controlling. The County as lessor had prior dealings with lessees who had made prior discoveries (in one case, of a valuable tyrannosaurus rex fossil). Frithiof made no affirmative misrepresentation. In their arm's-length dealings, he could reasonably expect the County to make its own investigation and protect its interests by inquiring into prior discoveries were that truly "basic to the transaction."[4] In these circumstances, we assume that Restatement § 551(2)(e) reflects South Dakota law but conclude that it imposed no duty to disclose

---

[4]Indeed, information suggesting a prior discovery was readily available. Interviews with Frithiof discussing Tinker appeared in newspaper articles across the country in late 1999 and early 2000, specifically mentioning the location of the find ("north of Belle Fourche, S.D.") and the time of discovery ("the summer of 1998"). <u>See, e.g.</u>, <u>1st Nearly Intact Skeleton of a Juvenile T. Rex Found</u>, L.A. Times, Dec. 1, 1999, at 17, <u>available at</u> 1999 WLNR 6623900; <u>T-Rex Skeleton Studied</u>, St. Paul Pioneer Press, Dec. 1, 1999, at 4A, <u>available at</u> 1999 WLNR 2393580.

Tinker's prior discovery during the lease negotiations. The absence of a duty to disclose "is true, in general, when it is the buyer of land . . . who has the better information and fails to disclose it." Restatement § 551, cmt. k.

Finally, the County argues that Frithiof's failure to disclose breached the implied covenant of good faith and fair dealing. The district court concluded that this duty "applies once a contract is executed" but does not "require a party's full disclosure of one's knowledge, plans, and intent during the negotiation of a contract." On appeal, the County cites no contrary authority. We agree with the district court. Under South Dakota law, this implied covenant "is not a repository of limitless duties and obligations." Farm Credit Servs. of Am. v. Dougan, 704 N.W.2d 24, 28 (S.D. 2005). It targets actions by one party that "limit[] or completely prevent[] the aggrieved party from receiving the expected benefits of the bargain." Nygaard v. Sioux Valley Hosp. & Health Sys., 731 N.W.2d 184, 194 (S.D. 2007).

Constructive Fraud. Constructive fraud under South Dakota law includes "any breach of duty which, without any actually fraudulent intent, gains an advantage to the person in fault . . . by misleading another to his prejudice." SDCL § 53-4-6. Constructive fraud will support an action to avoid a contract, but not a tort action for damages. Schmidt v. Wildcat Cave, Inc., 261 N.W.2d 114, 117 (S.D. 1977). As the statute expressly requires a breach of duty, the district court dismissed this claim based on its conclusion that Frithiof had no duty to disclose his prior discovery during the lease negotiations. We agree. See Sejnoha v. City of Yankton, 622 N.W.2d 735, 740 (S.D. 2001).

Actual Fraud. Actual (intentional) fraud is the basis for a tort action of deceit as well as an action to avoid a fraudulently induced contract. See SDCL §§ 20-10-1, 53-4-1(2). Fraud is almost identically defined for both purposes in SDCL §§ 20-10-2 and 53-4-5. As the County concedes Frithiof made no affirmative misrepresentation, this case implicates only the third subsection: "The suppression of a fact by one who

-8-

is bound to disclose it, or who gives information . . . likely to mislead for want of communication of that fact." SDCL § 20-10-2(3); see also SDCL § 53-4-5(3). The County argues that summary judgment was improper because actual fraud is a question of fact, and it presented evidence that Frithiof intended to deceive the County by "withholding . . . facts material to the lease and the lease terms." However, § 20-10-2(3) applies to "suppression of a fact by one who is bound to disclose it." No fraud action for intentional concealment will lie absent a duty to disclose. See Taggart, 462 N.W.2d at 499.

The County argues that attorney Nassour's cover letter enclosing the revised lease brings this fraud claim within the statute because it misleadingly failed to mention the revised "OTHER" clause. We disagree. This passive non-disclosure was not tantamount to active suppression or misrepresentation. Indeed, Nassour put the County's agents on notice of prior fossil activity by first proposing a back-dated lease and then, when that proposal was rejected, proposing a substitute "OTHER"clause expressly applying the lease to prior discoveries. As the district court observed:

> It was not the obligation of defendants to orally provide notice of a clause that was set apart from the remainder of the lease. Harding County, as a party to the contract, had a duty to review the contract and familiarize itself with the obligations of the contract. . . . To permit a party to admit that he signed a contract but did not read it or know its stipulations would absolutely destroy the value of all contracts.

This is not a case like Life Benefit, Inc. v. Elfring, 7 N.W.2d 133, 136 (S.D. 1942), where the insured fraudulently induced the insurance contract when she disclosed minor surgery but intentionally "suppressed and concealed the truth as she knew it, viz., that she had had a serious disorder of the breast and had had that breast removed." Here, even if Frithiof hoped that the prior discovery issue would slip by the County's notice, he had no duty to disclose and therefore committed no fraud,

actual or constructive.  See Weitzel v. Sioux Valley Heart Partners, 714 N.W.2d 884, 896-97 (S.D. 2006); Taggart, 462 N.W.2d at 498.

For the same reasons, the district court properly granted summary judgment dismissing the claim for rescission of the lease agreement based on the County's unilateral mistake of fact.  See SDCL §§ 53-4-9, 53-11-2.  Rescission for mistake of fact requires that the mistake "not result from the want of such care and diligence as would be exercised by a person of reasonable prudence under the same circumstances."  LPN Trust v. Farrar Outdoor Adver., Inc., 552 N.W.2d 796, 800 (S.D. 1996).  It is undisputed that Harding County made no effort to inquire into prior discoveries despite the lease's unambiguous "OTHER" clause.  The County did not ask Frithiof about any such discoveries, inspect its land, or attempt any investigation before entering into the lease.  Such complete inaction cannot satisfy the requirement for care and diligence.  If the County's agents mistakenly assumed that any prior discoveries were of nominal value, that assumption was contrary to the lease's plain language, which contemplated discovery of fossils worth more than $1000, and cannot provide grounds for rescission.  See Id. at 800; First Colony Life Ins. Co. v. Berube, 130 F.3d 827, 829 (8th Cir. 1997) (no rescission for mistake caused by neglecting to understand "the contents of the contract before he signed it") (applying South Dakota law).

### III.  THE COUNTY'S MISTAKE OF LAW (SDCL § 7-18-32)

The County did not hold public hearings under § 7-18-32 before entering into either of the 1996 leases.  In his motion for summary judgment, Frithiof argued "that the County cannot have it both ways:  two identical lease agreements providing for the same contingent compensation, one being worth in excess of $500, while the other one is not."  The County responded that whether the lease had a value of at least $500 per year was a disputed fact issue that must be tried.  The district court avoided that issue. Adopting the suggestion in Judge Colloton's concurring opinion in Frithiof I, 483

F.3d at 552-53, the court concluded that any failure to comply with § 7-18-32 was an exercise of the County's leasing authority in an "irregular manner," and the County is estopped by its own actions to rescind the lease on this ground.

On appeal, the County argues the court committed two errors of law: first, if the value of the lease exceeded $500 per year, then the County consented to the lease under a mistake of law and may now rescind, <u>see</u> SDCL § 53-4-10; and second, the necessary elements of estoppel are absent because the County took no affirmative action on which Frithiof relied to his detriment. We reject both contentions.

1. Section 53-4-10 authorizes rescission of a contract if there was (1) "misapprehension of the law by all parties . . . making substantially the same mistake as to the law," or (2) "misapprehension of the law by one party of which the others are aware at the time of contracting." The mistake must be material to the contract. <u>Home Bldg. & Loan Ass'n v. Perpetual Sav. & Loan Ass'n</u>, 338 N.W.2d 456, 459 (S.D. 1983). Here, the County presented no evidence that *Frithiof* made a mistake of law regarding compliance with § 7-18-32. Indeed, there is no evidence he even knew of that statute, which simply imposed a condition precedent on the County's authority to enter into the lease. Thus, any mistake as to § 7-18-32 compliance was the County's unilateral mistake of law (and likely was no mistake of law at all given Auditor Glines's testimony that the County was aware of the statute and concluded that the Frithiof lease, like the 1996 fossil leases, was worth less than $500 per year). Thus, § 53-4-10 provides no basis to rescind the lease.

The County argues that non-compliance with § 7-18-32 made the lease "an impermissible enlargement of the County Commission's power and authority." But that purported illegality is not a ground for rescinding the lease under SDCL § 53-11-2, and the County provides no other rescission authority. Section 7-18-32 is silent as to the consequences of failed or improper application. The County has not identified,

nor have we found, any case or statute providing that a failure to comply with § 7-18-32 automatically voids the offending lease.

2.  Turning to the estoppel issue, the County does not challenge the district court's conclusion, consistent with Judge Colloton's opinion in Frithiof I, that failure to hold a public hearing under § 7-18-32 amounted to an "irregular exercise" of the County's power to lease.  When "a county has power to act, it may be estopped by the acts of its agents although the method of exercising the power was irregular." Mellette County v. Arnold, 75 N.W.2d 641, 643 (S.D. 1956).  The County argues that it took no affirmative act that could create an estoppel.  This contention is without merit.  Entering into the lease agreement, without more, was such an affirmative act. See  Even v. City of Parker, 597 N.W.2d 670, 674-76 (S.D. 1999) (issuing a building permit); Mellette County, 75 N.W.2d at 644 ("A consent judgment *being in the nature of a contract* constitutes in the absence of fraud or mistake a waiver of errors and irregularities.") (emphasis added); Mo. River Tel. Co. v. City of Mitchell, 116 N.W. 67, 70 (S.D. 1908) (enacting ordinance).

The County further argues that Frithiof failed to meet his burden to prove detrimental reliance.  This argument, too, is without merit.  It is undisputed that, in reliance on the signed lease, Frithiof continued excavation and negotiations to sell Tinker to the Indianapolis Children's Museum, brought museum representatives to the site and assured them the lease gave him marketable title to the fossil, and later contracted with Colorado Dinosaur Company and Prehistoric Journeys for preparation, mounting, and marketing of the fossil.  This is more than adequate reliance to trigger an estoppel.  See Even, 597 N.W.2d at 674-75 (estoppel applied when builder purchased materials in reliance on invalid permit).

Viewing this issue in perspective, the County seeks to use its own alleged mistake in construing § 7-18-32 to reap the entire profit from Frithiof's efforts, based on failure to comply with a statutory procedure that likely would have delayed, but not

prevented, signing of the lease. Though estoppel should be used sparingly against public entities, we conclude the County's position on this issue is manifestly unjust. We affirm the district court's decision that the County is estopped to rescind the lease based on § 7-18-32 non-compliance.

## IV. PRE-LEASE TORT ISSUES

1. Trespass. The County argues that the district court erred in dismissing its claim for damages resulting from Frithiof's unconsented entry onto County property prior to signing of the November 2000 lease. The district court ruled that the County ratified any trespass because the "OTHER" clause expressly "contemplates defendants' previous presence on county land." The County argues there can be no ratification absent knowledge of the material facts and intent to ratify. See Drew v. Stanton, 603 N.W.2d 79, 83 (S.D. 1999).

As we see it, ratification is not the critical issue. Consent to enter land is a defense to trespass under South Dakota law. Benson v. State, 710 N.W.2d 131, 159 (S.D. 2006). Auditor Glines testified that County-owned lands are "open to the public" and that anyone "can go walk through . . . state land without it being a trespass issue." The County raised no trespass issue with two previous prospectors who requested and were granted leases after already entering County land and discovering fossils. Consequently, we conclude that Frithiof's entry on Harding County property prior to the lease signing was privileged by consent. Moreover, Frithiof was on the land with Gilbert's permission, and the County cloaked Gilbert as lessee with at least apparent authority to grant Frithiof permission to enter contiguous lands that Gilbert both owned and leased. Finally, we agree with the district court that the lease waived any claims for prior trespass.

2. Conversion. The County's complaint alleged that Frithiof committed the tort of conversion when he excavated and removed Tinker from County property without

-13-

the County's consent. The County sought compensatory and punitive damages for this serious interference with its ownership and possessory rights, later limiting this claim to fossils excavated and removed from the site prior to signing of the lease in November 2000. The district court granted summary judgment dismissing this claim on alternative grounds: (i) the fossils were real property (an "'ingredient' of the soil") and therefore not subject to conversion, see Denke v. Mamola, 437 N.W.2d 205, 207 (S.D. 1989); and (ii) if the fossils were subject to an action for conversion, the lease's "OTHER" clause provided permission for Frithiof's action "and thus, obviates any claim for conversion."

On appeal, Frithiof concedes that any fossils removed from the ground prior to the lease became personal property subject to an action for conversion. See Black Hills Inst. of Geological Research v. S.D. Sch. of Mines & Tech., 12 F.3d 737, 741-42 (8th Cir. 1993). Thus, the district court's first ground does not support summary judgment dismissing the entire conversion claim. Turning to the second ground, the County argues, relying again on Drew, 603 N.W.2d at 83, that it did not ratify Frithiof's conversion because "one cannot ratify an action of which they were not aware had already taken place." Frithiof counters that the County's consent to the prior removal of fossils is reflected in the prior discovery clause.

In November 2000, Harding County knew it was leasing land for the purpose of fossil prospecting and excavation, knew from prior discoveries in the area that fossils of more than nominal value might be found, knew County lands were open to the public and prior lessees had made discoveries before approaching the County for leases, and should have known from the plain language of the lease proposed by Frithiof that he may well have made prior discoveries. With this knowledge, the County entered into a lease expressly granting Frithiof title to prior fossil discoveries in exchange for ten percent of their sale price. It is a nice question, not adequately briefed by the parties, whether the County, as a matter of law, thereby waived an existing cause of action for conversion of which it may not have known but could

-14-

easily have uncovered with even modest inquiry. See generally PLM Inv. Mgmt., Inc. v. Dakota S. Ry. Co., 930 F.2d 1333, 1336 (8th Cir. 1991), quoting Norwest Bank S.D. v. Venners, 440 N.W.2d 774, 775 (S.D. 1989) ("To support the defense of waiver, there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right.").

We conclude we need not resolve this question because a cause of action for conversion will not lie after signing of the lease. "[C]onversion is an intentional exercise of dominion or control over a chattel, which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other *the full value of the chattel*." Rensch v. Riddle's Diamonds of Rapid City, Inc., 393 N.W.2d 269, 271 (S.D. 1986) (emphasis added). "A simple act of intermeddling with another's property . . . which is done in ignorance of the owner's claim thereto, and without any intention to deprive him of it, will not constitute a conversion." Richstein v. Roesch, 25 N.W.2d 558, 560 (S.D. 1946) (quotation omitted). Where the defendant's initial possession is rightful, conversion occurs only when he refuses the owner's demand that the chattel be returned. Rapid Sewing Ctr., Inc. v. Sanders, 112 N.W.2d 233, 236 (S.D. 1961). Here, when Frithiof learned that Tinker was discovered on County land, he approached the County for a lease. The County made no inquiry as to prior discoveries and no demand for their return. Instead, the County agreed to transfer title to any prior discoveries for ten percent of their sale price. In these circumstances, the County no longer had a cause of action for *the full value of the chattel* as a matter of law. As the district court properly concluded, the "OTHER" clause in the lease "obviate[d] any claim for conversion."

3. Civil Conspiracy. South Dakota law recognizes damage claims for civil conspiracy. However, the claim is "not an independent cause of action, [and] is sustainable only after an underlying tort claim has been established." Kirlin v. Halverson, 758 N.W.2d 436, 455 (S.D. 2008) (internal quotation omitted). Because Frithiof committed no underlying tort, the County's conspiracy claim fails.

Finally, the County argues that various pretrial evidentiary rulings were an abuse of the district court's discretion. As we have affirmed the grant of summary judgment, these issues are moot.

We grant Appellants' Motion To Supplement Record and affirm the judgment of the district court.

MELLOY, Circuit Judge, dissenting.

I believe the County has presented facts that, at a minimum, create a jury question on the conversion claim. One of the bases for the district court's decision on the conversion issue was a theory of ratification or waiver by the insertion of the "OTHER" clause in the lease. The parties' briefs were directed to the merits of the issue of whether the victim of a tort can unknowingly ratify that tort after the fact. Rather than address a defense "not adequately briefed by the parties," ante at 14–15, however, the majority raises a new question and resolves the claim on a logic not briefed at all.

The majority is correct that a conversion is "'an intentional exercise of dominion or control over a chattel, which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'" Ante at 15 (quoting Rensch v. Riddle's Diamonds of Rapid City, Inc., 393 N.W. 2d 269, 271 (S.D. 1986)). In expounding this definition, however, the majority concludes the County lost the right to seek full value by signing the lease and agreeing to a ten-percent royalty. In reaching this result, the majority first cites case law distinguishing between conversion and "[a] simple act of intermeddling with another's property, which does not imply any assertion of title of dominion over the property, and which is done in ignorance of the owner's claim thereto, and without any intention to deprive him of it." Richstein v. Roesch, 25 N.W.2d 558, 560 (S.D. 1946). Where, as here, the defendant has taken physical possession of the chattel and

attempted to sell it, however, the degree of interference could hardly be more complete. See, e.g., Restatement (Second) of Torts § 222A, illus. 2 (stating that mistakenly taking the property of another and not returning it until realization of the mistake three months later is a conversion). Compare Richstein, 25 N.W.2d at 560 (finding the filing of a lien insufficient to constitute conversion), with, e.g., Denke v. Mamola, 437 N.W.2d 205, 208 (S.D. 1989) (finding conversion where good-faith purchaser was unaware of plaintiff's interest in property). Second, the majority finds it relevant that "[w]here the defendant's initial possession is rightful, conversion occurs only when he refuses the owner's demand that the chattel be returned." Ante at 15 (citing Rapid Sewing Ctr., Inc. v. Sanders, 112 N.W.2d 233, 236 (S.D. 1961) (treating apartment lessor's initial possession of sewing machines left in apartment by former lessee as rightful where plaintiff had employed lessee and supplied him with the sewing machines in the course of his job as salesman)). As an isolated statement of law it is not incorrect, but it is not germane to this case because Frithiof's possession was not "rightful" under any interpretation of the record. See Rapid Sewing Ctr., 112 N.W.2d at 236 (citing Coleman v. Francis, 129 A. 718, 719 (Conn. 1925)); Coleman, 129 A. at 719–20 (discussing "wrongful" and "rightful" possession); see also Denke, 437 N.W.2d at 207 ("[Conversion] does not require wrongful intent and is not excused by care, good faith, or lack of knowledge.").

Ultimately, the majority's opinion comes full circle to conclude that the County has waived its conversion claim by agreeing to transfer title to prior discoveries for ten percent of their sale price, stating that the County, by entering the lease, "no longer had a cause of action for *the full value of the chattel*." Ante at 15. Conversion does not require that the plaintiff have "a cause of action for" the full value of the chattel. Rather, the interference must be sufficient "that the actor may justly be required to pay" the full value. Rensch, 393 N.W.2d at 271 (quotation omitted). The cases cited do not concern how interference once justifying full-value damages can later serve to justify only partial-value damages or how a later reduction in actual damages

completely undoes an existing conversion claim. Reframing the issue in terms of "full value" does not answer the question before us.

Frithiof does not seriously contend that the chattel was not converted; he argues instead that through the lease the County consented to, ratified, and affirmed the earlier conversion. Rather than address Frithiof's waiver defense directly, however, the majority emphasizes "*full value*" and summarily concludes that the County can inadvertently waive its existing cause of action because ex post the County will have waived its cause of action. To the contrary, waiver must be done "with full knowledge of the material facts." PLM Inv. Mgmt., Inc. v. Dakota S. Ry. Co., 930 F.2d 1333, 1336 (8th Cir. 1991) (quoting Norwest Bank S.D. v. Venners, 440 N.W.2d 774, 775 (S.D. 1989). Viewing the record in the light most favorable to the non-moving party, the County did not have "full knowledge of the material facts" that Frithiof had already discovered fossils worth millions of dollars and had already converted them for his own use.

My second area of disagreement with the majority opinion is its refusal to consider the County's reliance on South Dakota Codified Laws sections 55-1-8 and 55-2-1, presumably on the basis that they were cited for the first time in the County's reply brief. It is somewhat ironic that the difficult issue of conversion is decided on a basis that was neither relied upon by the district court nor raised by the parties in their briefs, yet a statutory section that was cited, albeit in the reply brief, is ignored. Moreover, the County's argument was raised in the district court and the appellant's opening brief, admittedly without citation to the relevant South Dakota statute. In its brief to the district court in opposition to summary judgment, the County framed this argument in terms of the "additional circumstances" that can create a fiduciary duty under South Dakota law. See Sporleder v. Van Lier, 569 N.W.2d 8, 13 (S.D. 1997). The County argued: "'Additional circumstances' are present in this unique case as the Defendants had already . . . removed the very object which the lease allowed them to search for." As a part of its opening fiduciary-duty argument on appeal, the County

-18-

stated that "[b]ecause Frithiof already had possession of the fossil while negotiating with the County, Defendants had a duty [of] complete candor." Frithiof acknowledged the argument, but countered merely: "The case authority cited by [the] County does not support that conclusion." While the County failed to clearly delineate its various fiduciary-duty arguments in its opening brief, this particular argument is clarified and supported in the County's reply brief. Simply put, "Because of his control and knowledge of Harding County's ownership of the fossil, Frithiof was acting as Harding County's trustee, albeit unbeknown to the County." See S.D. Codified Laws § 55-1-8 ("One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it."); Id. § 55-2-1 ("In all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.").

I acknowledge that the appellant's opening brief can be fairly read to raise only a theory of common law implied trust while the reply brief shifts the focus to a theory of statutory fiduciary duty. However, I am troubled that we would reject a potentially dispositive theory simply because the relevant statutes were not cited until the reply brief, particularly when another issue is resolved on a basis that was not argued in any brief.

I respectfully dissent.

_____